PEOPLE *v.* BEAN.

1. CRIMINAL LAW—CONSTITUTIONAL LAW—VOLUNTARY STATEMENTS
—RES GESTAE—POSSESSION OF BURGLARY TOOLS.

Incriminating statements voluntarily made by a criminal suspect at time of his apprehension and before being warned of his constitutional rights *held*, properly admitted in evidence as part of the *res gestae* in prosecution for possession of burglary tools (CL 1948, § 750.116).

2. SAME—STATEMENTS TO OFFICERS—VOLUNTARINESS—EVIDENCE.

Admission into evidence of statements by defendant to police officers after being advised of his constitutional rights *held*, not reversible error in prosecution for possession of burglary tools, where the trial judge fully complied with required procedure by holding a separate hearing, out of the presence of the jury, to determine the voluntariness of defendant's statements before admitting them in evidence (CL 1948, § 750-.116).

3. SAME—MOTION TO QUASH—PRELIMINARY EXAMINATION—SUFFICIENCY OF EVIDENCE.

Defendant's motions, made before trial, to dismiss and to quash the charges against him on the grounds that the evidence at the preliminary examination failed to establish the elements of the crime of possessing burglary tools or that defendant committed it, *held*, properly denied, where the record discloses that the evidence was presented at the preliminary examination, establishing an attempted breaking and entering and possession of burglary tools by defendant, since the sole pur-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 708 *et seq.*
[2] 29 Am Jur 2d, Evidence §§ 612, 644.
[3, 5] 21 Am Jur 2d, Criminal Law § 449.
[4] 21 Am Jur 2d, Criminal Law § 443.
[6] 5 Am Jur 2d, Appeal and Error § 831.
[7] 53 Am Jur, Trial § 591 *et seq.*

pose of the preliminary examination is to determine whether a crime has been committed and that there is probable cause to believe the accused committed it (CL 1948, § 750.116).

4. SAME—PURPOSE OF PRELIMINARY EXAMINATION—PROBABLE CAUSE.

The purpose of a preliminary examination of an accused is to establish that a crime has been committed and, if so, that there is probable cause to believe that the accused committed it.

5. SAME—SUFFICIENCY OF EVIDENCE—POSSESSION OF BURGLAR'S TOOLS.

Claim that defendant's conviction of possession of burglary tools was contrary to the overwhelming weight of the evidence, and that the trial court should have directed a verdict of not guilty, *held*, without merit, where the verdict rendered by the jury is found consistent with the facts and evidence as presented (CL 1948, § 750.116).

6. APPEAL AND ERROR—VERDICTS—EVIDENCE—CREDIBILITY OF WITNESSES.

The jury, sitting as a trier of facts, has the opportunity to see the witnesses, listen to their testimony, and decide the credibility of their respective testimonies, and the verdict of the jury will not be reversed on appeal where consistent with the facts and evidence as presented.

7. CRIMINAL LAW—QUESTION OF FACT—TRIAL—REFUSAL OF JUDGE TO DISCUSS WITH JURY.

Refusal of trial judge in trial of a criminal case to discuss a proposed question with the jury *held*, not reversible error, where the record discloses that the foreman of the jury stated that the proposed question was one "of fact."

Appeal from Recorder's Court of Detroit; Groat (Gerald W.), J. Submitted Division 2 December 8, 1966, at Lansing. (Docket No. 1,279.) Decided July 20, 1967.

Vernon L. Bean was convicted of the possession of burglary tools. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,*

Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Rheo C. Marchand,* Assistant Prosecuting Attorney, for the people.

*Joseph A. Powers,* for defendant.

McGREGOR, J.   The appellant, Vernon Lee Bean, was arrested on February 15, 1965, and charged with the offense of being in possession of burglary tools, in violation of CL 1948, § 750.116 (Stat Ann 1962 Rev § 28.311).   After arraignment and formal examination, a motion to quash and a motion to determine the admissibility of the appellant's confession were heard and denied.   The case was heard before a jury and the appellant was found guilty.   Upon the jury verdict, the appellant was sentenced to a term in the State prison of not less than 3-1/2 years nor more than 10 years.

The appellant now contends primarily that the trial court erred in admitting oral confessions and statements made by him without the benefit of counsel, and that the verdict was against the overwhelming weight of the evidence.   He contends that he was not effectively warned of his "absolute constitutional rights" within the meaning of the precedents of the United States Supreme Court, of *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L ed 2d 977), *Gideon* v. *Wainwright* (1963), 372 US 335 (83 S Ct 792, 9 L ed 2d 799, 93 ALR2d 733), *White* v. *Maryland* (1963), 373 US 59 (83 S Ct 1050, 10 L ed 2d 193), *Hamilton* v. *Alabama* (1961), 368 US 52 (82 S Ct 157, 7 L ed 2d 114), and *Carnley* v. *Cochran* (1962), 369 US 506 (82 S Ct 884, 8 L ed 2d 70).

The appellant testified that "they roughed me up a little bit, not what you call a beating or nothing, but one of the officers threatened me with a pistol." It is noted that the threatening with a pistol came

before the appellant was arrested and while he was fleeing down the alley. He also testified that after he was put in the back seat of the patrol car, the officers threw the jacks into the car and asked if they were his, to which he replied that they were, because he was "scared." As to statements made by the appellant at the police station, he said, "I don't remember actually the things that I told him because I was not actually scared, but I was nervous and dumbfounded at being arrested here in Detroit."

Appellant also claims error because the witness who first called the police to the scene of the attempted breaking and entering was unavailable at the trial. He claims that this, with the other facts, should have led the trial court to direct a verdict of not guilty, and that there was no evidence to connect the appellant with ownership or possession of the implements in question, nor was there evidence that a crime had been committed.

A police officer of the city of Detroit police department testified that he was in a patrol car and responded to a police radio call that a breaking and entering of a grocery store was in progress at 4160 Cass avenue. The officer and his partner arrived at the scene and "observed a colored man running" from the rear of the block of stores on which was located the store reportedly being broken into. The officers chased the man and caught him less than a block away, after losing sight of him for only a few seconds and then regaining sight of him. The apprehended man was the appellant. The officers asked the appellant, "What are you running from?", and he replied, "I tried to break into the store." Appellant was then arrested and put into the patrol car. At the back of the store the officers found a scissors jack, a bumper jack, a bumper jack handle, and a pipe wrench. The officer testified that the appellant

told them he got the bumper jack out of an auto and that he needed money.

A police officer assigned to the criminal investigation bureau testified that he had a conversation with the appellant later the same day of the arrest, and that he advised the appellant of his constitutional rights. He testified that the appellant related how he had gone to the rear of 4160 Cass avenue about 1 a.m. and spent about an hour trying to break into the grocery store in question by prying the window bars apart with a bumper jack. Having no luck getting the bars apart, appellant was gathering up his tools when he saw the police coming and he ran about half a block before he was apprehended. The information thus given by the appellant was reduced to writing, whereupon the appellant read the statement and signed it. Another police officer testified that on February 15, 1965, he also had an occasion to talk to the appellant and also had advised him of his constitutional rights. He testified that he re-read the signed statement to the appellant and the appellant acknowledged it as his own. The same police officer testified that he interviewed the appellant three days later, at which time the appellant claimed he was going to change his story in order to "beat this case" and the appellant was also going to claim the statement was made because of fear of the police officers.

It is noted that the statements of the appellant were not admitted at trial until after their voluntariness was established by the trial judge, on a separate record, and in the absence of a jury. After their voluntariness had been established, the testimony of the police officers was repeated before the jury.

An expert witness employed by the Detroit police department testified that he was familiar with the tools used and designed for the purpose of breaking

and entering buildings, and that the jacks offered into evidence could be used for that purpose.

The appellant took the stand on his own behalf and testified that he was just new in Detroit, having moved from Chicago a couple of months previously. He related that he had previous arrests in Illinois and Nebraska for grand larceny and burglary. He told the story of going into the alley to relieve himself and that he ran out of the alley because of previous experiences he had had with police brutality in other states. He said that he had admitted the jacks belonged to him, but that he had done so because he was afraid of the police. He denied that he was advised that he was entitled to an attorney.

The appellant contends that the only evidence connecting him with the offense were incriminating statements made by him to the police officers after his arrest. A reading of the transcript does not support this contention. Appellant was still on the scene when the police officers arrived and he admitted at the scene that he owned the jacks and other instruments left at the attempted breaking and entering.

The appellant made several admissions, both at the scene and later while in detention, which specifically outline in considerable detail his preparation to attempt a breaking and entering, and his subsequent flight. The appellant now claims these admissions were "secured in violation of his rights under the 6th and 14th Amendments to the United States Constitution." The Federal authorities cited by the appellant in support of his contention that he was not warned of his constitutional rights, *Escobedo* v. *Illinois, supra, Gideon* v. *Wainwright, supra, White* v. *Maryland, supra, Hamilton* v. *Alabama, supra, Carnley* v. *Cochran, supra,* deal with circumstances different from those in the case at bar. In this case,

the only incriminating statements taken from the
defendant before he was advised that he was entitled
to an attorney and was not required to make any
statement unless he wished to do so, were the unpre-
meditated outbursts. made by the appellant at the
time of his apprehension.   Thereafter, appellant
was repeatedly advised of his rights, and on one
occasion he acknowledged this advice in writing.
The decision of the appellant to repudiate the state-
ments was probably best explained by the appellant's
own testimony from the witness stand, when he
stated that his fellow prisoners in the Wayne county
jail told him, "Don't go out there and talk to the
officers because, they says, well, you'll say something
you'll be sorry for."

While the unpremeditated outbursts by the appel-
lant at the time of arrest were made before the ap-
pellant could be advised of his right to remain silent,
they were admissible as part of the *res gestae,* as
the trial court correctly ruled.   The law does not
require that police officers must close their ears to
all words uttered by a suspect preceding and during
an arrest.   All other statements made by the appel-
lant were made after he had been advised of his
rights.   The trial court, in first determining the
voluntariness of the statements of the appellant out
of the presence of the jury, followed the proper
Michigan procedures, *People* v. *Walker* (on rehear-
ing, 1965), 374 Mich 331, and the admission into
evidence of the appellant's statements, after they
were determined to have been voluntary, was proper.

Appellant caused to be filed before trial a motion
to dismiss and a motion to quash, wherein he con-
tended that the examination failed to establish the
elements of the crime and that the alleged confession
was not admissible.   This motion was heard and
denied.   The purpose of a preliminary examination

is to establish probable cause. It is an inquiry to ascertain whether the crime charged has been committed and if so, if there is probable cause to believe that the accused committed it. *People* v. *McLean* (1925), 230 Mich 423; *People* v. *Zaleski* (1965), 375 Mich 71. At the examination, the appellant was represented by counsel. Evidence was presented as to the appellant's connection with the attempted breaking and entering and possession of burglary tools. The motions in advance of trial were properly denied.

The jury sat as a trier of facts and they had an opportunity to see the witnesses, listen to their testimony, and decide the credibility of their respective testimonies. *People* v. *Hancock* (1950), 326 Mich 471. The verdict they rendered was consistent with the facts and evidence as presented.

Defendant claims that the trial court committed reversible error in refusing to discuss a question which the foreman of the jury stated to be one "of fact." It is clear from the record that the trial court scrupulously avoided any interference with the prerogatives of the jury. Upon perusal of the transcript, we find no reversible error as is claimed by the appellant.

The conviction is affirmed.

T. G. KAVANAGH, P. J., and J. H. GILLIS, J., concurred.