PEOPLE v MEYER

1. CRIMINAL LAW—CORPUS DELICTI—ADMISSIONS AND CONFESSIONS—
PRELIMINARY EXAMINATION.
   The corpus delicti must be proved *aliunde* a defendant's confession or extra-judicial statements, and this principle is applicable to preliminary examinations.

2. HOMICIDE—CORPUS DELICTI—EVIDENCE.
   The component elements of the corpus delicti in a homicide case are (1) the existence of a dead body and (2) evidence of an unnatural cause of death, alternatively described as evidence that the death was the result of the criminal act or agency of another.

3. HOMICIDE—CORPUS DELICTI—EVIDENCE.
   In cases of homicide the corpus delicti may or may not be established by evidence disclosed by a dead body; if the body discloses death occasioned by criminal means then the corpus delicti is made out; however, if a dead body does not furnish such proof, then death by criminal means must be shown to establish the corpus delicti.

4. CRIMINAL LAW—CORPUS DELICTI—HEARSAY—INCULPATORY STATEMENTS.
   Although an admission may be admitted in evidence as an exception to the hearsay rule, it may not be admitted for purposes of proving the corpus delicti; however such an admission, when it also satisfies the spontaneous utterance exception to the hearsay rule, may be admitted to prove the corpus delicti because the satisfaction of another exception to the hearsay

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 440–451; 29 Am Jur 2d, Evidence § 611 *et seq.*
[2, 3] 40 Am Jur 2d, Homicide §§ 284, 285.
[4] 30 Am Jur 2d, Evidence §§ 600, 605, 610.
[5] 29 Am Jur 2d, Evidence § 710.
[6, 7] 40 Am Jur 2d, Homicide § 337.
[8] 25 Am Jur 2d, Drugs and Narcotics §§ 16, 33–39.
[9] 40 Am Jur 2d, Homicide §§ 54–70.

rule provides a further indication of the truth and reliability of the statement which justifies its admission.

5. CRIMINAL LAW—EVIDENCE—HEARSAY—RES GESTAE EXCEPTION—SPONTANEOUS UTTERANCES.

The definitional elements of the res gestae exception constituting a spontaneous utterance exception to the hearsay rule have been enunciated as follows: (1) that there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it, and spontaneous utterances by defendants which are contemporaneous to the event are no less governed by this exception even though they contain an admission of guilt.

6. HOMICIDE—CORPUS DELICTI—HEARSAY—ADMISSION—SPONTANEOUS UTTERANCES.

An admission satisfying the spontaneous utterance exception to the hearsay rule provides a verifying indicator of truthfulness and reliability and may be admitted for the purpose of establishing the corpus delicti in a homicide case.

7. HOMICIDE—CORPUS DELICTI—EVIDENCE—ADMISSIONS.

Admissions made by a defendant and his codefendant to decedent's brother and sister less than three hours after a homicide were sufficiently contemporaneous with the event to make the inculpatory statements admissible by the examining magistrate to establish the existence of someone's criminality where competent medical testimony was sufficient to establish the corpus delicti.

8. DRUGS AND NARCOTICS—CRIMINAL LAW—ACTS MALUM PROHIBITUM.

The sale of heroin to the general public, unlike alcohol, is absolutely prohibited and the distinction between these intoxicants and the clear danger of addiction justifies the failure to classify either drug abuse or an overdose as an act *malum prohibitum.*

9. HOMICIDE—MANSLAUGHTER—CHARACTERIZATION OF CRIMINAL ACTS.

The crime of manslaughter is not based upon a characterization of an act as being *malum prohibitum* or *malum in se* and either act will support a conviction for the crime of manslaughter provided it is accompanied by a reckless disregard for the safety of others.

Appeal from Washtenaw, William F. Ager, J. Submitted Division 2 December 5, 1972, at Lansing. (Docket No. 12814.) Decided April 24, 1973.

Blanda Meyer was bound over for trial on a charge of manslaughter. Defendant's motion to quash the information denied. Defendant appeals by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Rob Craig,* Assistant Prosecuting Attorney, for the people.

*Thompson, Bishop, Tryand & Thompson,* for defendant.

Before: BRONSON, P. J., and R. B. BURNS and DANHOF, JJ.

BRONSON, P. J. Blanda Meyer, defendant, and Nathan Langwald, codefendant, were charged with manslaughter.[1] MCLA 750.321; MSA 28.553. Following a preliminary examination held on November 6, 1970, both defendants were bound over for trial. Defendant filed a motion to quash the information in the trial court, which was subsequently denied. From this denial, defendant, the sole appellant herein, sought leave to take an interlocutory appeal. This Court granted leave to consider defendant's allegation that there was insufficient evidence at the preliminary examination to establish the corpus delicti and that an act which is

---

[1] This offense was based upon the information which charged defendant and codefendant with "wilfully and unlawfully and feloniously, but without malice, inject[ing] a narcotic drug into the person of Judy Susan Bruno, thereby inflicting divers mortal wounds and injuries of which she did die".

merely *malum prohibitum* may not constitute the crime of manslaughter.

The fortuitous death precipitating the instant charge was established by the following testimony at the preliminary examination. At approximately 6 a.m. on June 10, 1970, two Ann Arbor city police officers responded to a telephone report of a woman screaming in a private residence on Greenwood Street. The officers were admitted at the given address by one Nathan Langwald and directed upstairs to a bedroom. Upon entering the bedroom, they observed defendant holding a washcloth on the forehead of Judy Bruno. One of the officers examined Judy Bruno and found that she appeared to be dead. This officer described the body as bluish in color and the existence of excessive drainage from the nose and mouth. A medical examiner was subsequently called to the scene and verified the girl's death.

The officers interviewed defendant in an attempt to determine the cause of death. Defendant responded that she believed the deceased was "stoned on downers". Upon searching the premises the officers found a box of pills near the bed where the deceased was found and narcotic paraphernalia consisting of hypodermic needles, cotton balls, and a spoon with a charred bottom in another bedroom.

Evidence regarding the specific cause of death was offered by Dr. Ronald H. Nishiyama, the pathologist performing the autopsy. Dr. Nishiyama found frothing at the nose, nostrils, and trachea, fluid in the lungs, three needle marks in the area of the right elbow, and one needle mark of more recent origin near the left elbow. The autopsy failed to disclose any preexisting disease or natural illness. The witness concluded that death re-

sulted from pulmonary edema and was caused by probable drug intoxication.

Support for this conclusion was offered by the testimony of John DeVries, a toxicologist employed by the Michigan State Department of Public Health. This witness tested the specimens from the autopsy for the presence of barbiturates and narcotic drugs. No indication of barbiturates was found in the specimens and no presence of drugs was found in the liver. However, the test of the bile specimen disclosed quinine, a common adulterant of heroin, which indicated the presence of morphine.[2] Although viewing this indication significant, Mr. DeVries admitted that there was no morphine found in the bile which he could positively identify. Based upon these tests and the autopsy, Dr. Robert Hendrix, the deputy medical examiner assisting Dr. Nishiyama, opined that the "deceased died from the effects from the injection of drugs, including quinine and a morphine derivative".

Michael Bruno, brother of the deceased, testified that he and codefendant Langwald drove to a "dope house" in Detroit the night before Judy Bruno died and each purchased $100 worth of heroin. On the return trip, they picked up the deceased and defendant in Ann Arbor. Thereafter Michael Bruno went home and the trio returned to their apartment. At approximately 7 a.m. the following morning, he received a telephone call from Langwald requesting a meeting and offered his house for this purpose. Upon arriving, Lang-

---

[2] The proffered expert testimony indicated that heroin is a narcotic which is synthesized from morphine. After injection into the body, it is metabolized by the liver into free morphine and conjugated morphine which appears in the bile and urine upon testing. Thus, the tests were conducted to detect the presence of morphine rather than heroin.

wald told this witness that his sister was dying. Defendant had accompanied Langwald and both related a story of helping deceased try narcotics, albeit at her request, by giving her an injection of heroin. Since deceased failed in her attempt to hit a vein, Langwald injected the heroin while defendant held her arm. They subsequently gave deceased a second injection since deceased complained that she wasn't high. Laurie Bruno, sister of deceased, was present during these conversations and verified the related story.

The preliminary examination was concluded with the testimony of Sergeant Winters. This witness related the confession of codefendant Langwald that he injected the heroin into the deceased and the confession of defendant that she participated by holding deceased's arm, which he received during an interview on July 24, 1970. At the conclusion of the prosecutor's presentation of evidence, the examining magistrate bound defendant and codefendant over to the circuit court for trial.

Defendant's first allegation of error is that there was insufficient evidence independent of her confession to establish the corpus delicti. It is the fundamental jurisprudence of this state that the corpus delicti must be proved *aliunde* defendant's confession or extrajudicial statements. *People v Ranney,* 153 Mich 293 (1908); *People v Kirby,* 223 Mich 440 (1923); *People v Asta,* 337 Mich 590 (1953); *People v Barron,* 381 Mich 421 (1968). This principle is no less applicable to a preliminary examination. *People v Randall,* 42 Mich App 187 (1972) and cases cited therein. Since defendant's confession was inadmissible for this purpose, the remaining evidence must be evaluated to determine its sufficiency.

The component elements of the corpus delicti in a homicide case are (1) the existence of a dead body and (2) evidence of an unnatural cause of death. *People v Jackson,* 1 Mich App 207 (1965); *People v Herrera,* 12 Mich App 67 (1968); *People v Allen,* 39 Mich App 483 (1972), *leave granted,* 388 Mich 810 (1972). This second element has been clarified by being alternatively described as evidence that the death was the result of the criminal act or agency of another. *Brown v People,* 17 Mich 429 (1868); *People v Kirby, supra; People v Mondich,* 234 Mich 590 (1926); *People v Randall, supra.* In the *Kirby* case, Judge WIEST described the circumstances in which specific proof of criminal means was necessary in his concurring opinion as follows:

"In cases of homicide the *corpus delicti* may or may not be established by evidence disclosed by a dead body. If a body discloses death occasioned by criminal means then the *corpus delicti* is made out. If a dead body does not furnish such proof then *death by criminal means* must be shown to establish the *corpus delicti."* p 451 (emphasis added).

The significance of this element becomes apparent upon a review of the post-mortem examination.

The proffered medical evidence established (1) the absence of barbiturates, (2) the presence of quinine, which indicated the presence of morphine, (3) the existence of needle marks, one of recent origin, (4) anatomic changes associated with the patient diagnosed as pulmonary edema, and (5) the absence of a preexisting disease or natural illness. This combination of factors, including circumstantial evidence, was sufficient to establish the unnat-

ural character of the death[3] but creates no reliable evidence of another person's criminality. Without more, these facts are as consistent with a theory of accident or self-injection by the deceased as a theory of criminality. However, defendant's alleged criminal act can be established by her statements and Langwald's statements made to the deceased's brother and sister following the homicide. Since these statements constitute admissions, we must determine whether they fall within the purview of case law proscribing the use of confessions or extrajudicial statements to establish the corpus delicti.

Recently, this Court in *People v Randall, supra,* held that defendants' inculpatory statements which satisfied another exception to the hearsay rule were admissible to prove the corpus delicti. The *Randall* panel reasoned that statements otherwise classified as admissions which satisfied another exception to the hearsay rule provided a further indication of truth and reliability which justified their admission. After recognizing Michigan's history of classifying hearsay exceptions within the all-inclusive term res gestae, the *Randall* panel suggested that res gestae statements be differentiated into the appropriate component rules advocated by Professor Wigmore.[4]

Adopting this persuasive approach, we find that the spontaneous or excited utterance is the appropriate hearsay exception applicable to the instant case. The definitional elements of the res gestae exception constituting a spontaneous utterance have been enunciated as follows:

---

[3] The use of circumstantial evidence to establish the corpus delicti has been sanctioned by our courts. *Peterson v Oceana Circuit Judge,* 243 Mich 215 (1928); *People v Barron,* 381 Mich 421 (1968); *People v Limon,* 4 Mich App 440 (1966); *People v Belcher,* 29 Mich App 341 (1971); *People v Davis,* 34 Mich App 678 (1971).

[4] *See, also, People v Jones,* 38 Mich App 512 (1972).

" * * * (1) [T]hat there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it." *Rogers v Saginaw-Bay City R Co,* 187 Mich 490, 494 (1915).[5]

Spontaneous utterances by defendants which are contemporaneous[6] to the event are no less governed by this exception even though they contain an admission of guilt. In *People v Quimby,* 134 Mich 625, 633 (1903), the Court admitted defendant's admission of giving her children morphine to establish the corpus delicti. Defendant's admission was given to the prosecuting attorney upon his arrival and considered by the *Quimby* Court as part of the res gestae since the "conversations occurred during the progress of this horrible tragedy". After reciting the conditional elements of a spontaneous utterance, the Court in *People v Griffin,* 4 Mich App 604 (1966), similarly admitted defendant's oral statements to the police as part of the res gestae.[7] Although the prior courts discussed admissibility in terms of res gestae, the factual

---

[5] *Accord, People v Giovannangeli,* 231 Mich 474, 477–478 (1925); *Rice v Jackson,* 1 Mich App 105, 111 (1965); *People v Ivory Thomas,* 14 Mich App 642, 646 (1968); *People v Kelley,* 32 Mich App 126, 135 (1971). Josephson, *Evidence,* 1971 Annual Survey of Michigan Law, 18 Wayne L Rev 101, 112 (1972).

[6] *See, People v Giovannangeli,* 231 Mich 474, 477 (1925). Although the *Giovannangeli* Court found a self-serving statement made three hours after a shooting not contemporaneous with the crime, subsequent case law has more liberally construed the passage of time requirement for spontaneity. *People v Woodward,* 21 Mich App 549 (1970); *People v Noble,* 23 Mich App 100 (1970). *But see,* Josephson, *Evidence,* 1971 Annual Survey of Michigan Law, 18 Wayne L Rev 101, 112 (1972) (for a criticism of these and other cases).

[7] *See,* also, *People v Bean,* 7 Mich App 402 (1967) and *Peo, ϱ v Durkee,* 369 Mich 618, 627 (1963) (where the Court without citing authority stated that "the [lower] court did not err in allowing the investigating officer to testify in regard to what defendant told him shortly after the accident").

backgrounds involved support the conclusion that the courts were dealing with the spontaneous utterance exception to the hearsay rule. If the criteria of the exception are satisfied, it is no less applicable to admissions by defendants. Since an admission satisfying the spontaneous utterance exception provides a verifying indicator of truthfulness and reliability, it may be admitted for the purposes of establishing the corpus delicti.

In the present case Nathan Langwald telephoned Michael Bruno approximately one hour after the death and was instructed to come to Bruno's house. Langwald, accompanied by defendant, arrived in the early morning hours of June 10, 1970, and they related their incriminating story involving the death of Judy Bruno. Although the specific time at which the admissions were made does not appear in the record, there is sufficient evidence to indicate that it was contemporaneous with the event. Since the passage of time was less than the three hours rejected in *People v Giovannangeli,* 231 Mich 474 (1925), subsequent case law liberalizing the contemporaneous rule need not be evaluated or consulted.[8] The record likewise discloses the existence of the conditional elements necessary to establish the spontaneity of the statements, the absence of contrivance or misrepresentation and relation to the circumstances of the occurrence. The inculpatory statements of both Langwald and Blanda Meyer were properly admitted by the examining magistrate to establish the existence of someone's criminality. The medical testimony corroborated by this evidence was sufficient to establish the corpus delicti independent of the proffered confessions.

Defendant's second allegation of error is that an

---

[8] *See* fn 5.

act of injecting heroin into another which is merely *malum prohibitum* cannot constitute the crime of manslaughter. Defendant's reliance upon *People v Pavlic,* 227 Mich 562 (1924), is misplaced. The *Pavlic* case involved the sale of alcohol. The sale of heroin to the general public, unlike alcohol, is absolutely prohibited. The distinctions between these intoxicants and the clear danger of addiction justifies our failure to classify either drug abuse or an overdose as an act *malum prohibitum.* Furthermore, defendant misreads the *Pavlic* case. The crime of manslaughter is not based upon a characterization of the act as being *malum prohibitum* or *malum in se.* Either act will support a conviction for the crime of manslaughter provided it is accompanied by a reckless disregard for the safety of others. *People v Harris,* 214 Mich 145 (1921); *People v Pavlic, supra; People v Scott,* 29 Mich App 549 (1971).

Neither of the issues raised evidence the commission of reversible error. Accordingly, we affirm the examining magistrate's decision to bind defendant over for trial.

Affirmed.

All concurred.