PEOPLE v JUNIEL

1. CRIMINAL LAW—APPEAL AND ERROR—WALKER HEARING—VOLUN-
TARINESS.

The Court of Appeals, in reviewing a court's *Walker* hearing
decision, is required to examine the record and make an
independent determination of the voluntariness of the chal-
lenged statements.

2. CRIMINAL LAW—MIRANDA WARNINGS—INVESTIGATION—ACCUSA-
TORY STAGE—SUSPECTS.

An individual must be given the *Miranda* warnings at the point
when a police investigation has passed from the investigatory
to the accusatory stage; the crucial factor in determining if an
investigation has become accusatory is whether it has focused
on one suspect.

3. CRIMINAL LAW—APPEAL AND ERROR—PRELIMINARY EXAMINATION
—PROBABLE CAUSE—MAGISTRATE'S DETERMINATION—ABUSE OF
DISCRETION.

A magistrate's determination of probable cause at a preliminary
examination will not be upset on appeal except in a case of a
clear abuse of discretion.

4. HOMICIDE—FIRST-DEGREE MURDER—DELIBERATION—PREMEDITA-
TION—HOT BLOOD—SECOND LOOK.

Murder in the first degree is deliberate and premeditated murder,
that is, characterized by a thought process undisturbed by hot
blood; while the minimum time necessary to exercise this

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 440, 441.

[2] 29 Am Jur 2d, Evidence §§ 555–557.

[3] 21 Am Jur 2d, Criminal Law §§ 443, 444, 447, 449, 450.

[4] 40 Am Jur 2d, Homicide §§ 44–48, 52.

[5, 9] 40 Am Jur 2d, Homicide § 285.

[6, 7] 30 Am Jur 2d, Evidence §§ 1140–1142, 1173.

[8] 40 Am Jur 2d, Homicide §§ 7, 41, 44.

[10] 40 Am Jur 2d, Homicide § 5.

Inference of malice or intent to kill where killing is by blow
without weapon. 22 ALR2d 854.

process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a "second look".

5. HOMICIDE—FIRST-DEGREE MURDER—CORPUS DELICTI—CONFESSIONS —ADMISSIBILITY.

The corpus delicti of first-degree murder for a probable cause showing before a magistrate at a preliminary examination must be demonstrated *aliunde* a defendant's confession, and a confession is inadmissible until the corpus delicti is shown.

6. CRIMINAL LAW—CORPUS DELICTI—EVIDENCE—TRIER OF FACT—ELEMENTS OF OFFENSE.

The corpus delicti of a crime is established when the people have introduced evidence from which the trier of fact may reasonably find that acts constituting all the essential elements of the offense have been committed and that someone's criminality was responsible for the commission of those acts.

7. CRIMINAL LAW—CORPUS DELICTI—EVIDENCE—ADMISSIBILITY— NONCONFESSION STATEMENTS—ADMISSIONS.

Certain types of nonconfession statements, while classified as admissions, may be used to establish the corpus delicti of an offense: (1) a statement itself an element of the offense, (2) an excited utterance, (3) a statement made before the crime's commission, or (4) a statement made contemporaneously with the crime.

8. HOMICIDE—COMMON LAW MURDER—SECOND-DEGREE MURDER— MALICE—PRESUMPTIONS—DEADLY WEAPON—FIRST-DEGREE MURDER—PREMEDITATION—INFERENCES.

The element of malice in common law, second-degree murder may be presumed from the use of a deadly weapon in the perpetration of the killing, and the use of a deadly weapon may support an inference of premeditation, the additional element required for first-degree murder.

9. HOMICIDE—FIRST-DEGREE MURDER—CORPUS DELICTI—EVIDENCE— ADMISSIBILITY—CONTEMPORANEOUS STATEMENTS—REFLECTION— FABRICATION.

A statement, "I hope so", made to police who asked the defendant when she was only a suspect and prior to the *Miranda* warnings if she had shot the decedent was admissible to establish the corpus delicti of first-degree murder where the statement was sufficiently contemporaneous with the shooting and made before the defendant had time to reflect or fabricate.

10. HOMICIDE—SECOND-DEGREE MURDER—INTENT—LETHAL WEAPON—
    MALICE AFORETHOUGHT—JUSTIFICATION—EXCUSE—MITIGATION.

    A court properly refused to direct a verdict on a second-degree
    murder charge where there had been an unlawful killing, and
    statements made to a police officer by the accused to the effect
    that the accused had intentionally shot the decedent, combined
    with the use of a lethal weapon at close range, were probative
    of the presence of malice aforethought and the absence of
    justification, excuse or recognized mitigation.

Appeal from Kent, John T. Letts, J. Submitted
June 5, 1975, at Grand Rapids. (Docket No. 19860.)
Decided July 21, 1975. Leave to appeal applied for.

Bessey M. Juniel was convicted of manslaughter.
Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Harold S. Sawyer,*
Prosecuting Attorney, *Donald A. Johnston, III,*
Chief Assistant Prosecuting Attorney, and *Craig S.
Neckers,* Assistant Prosecuting Attorney, for the
people.

*H. Rhett Pinsky,* for defendant.

Before: McGREGOR, P. J., and D. E. HOLBROOK
and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. On January 31, 1974, defend-
ant was convicted of manslaughter, MCLA
750.321; MSA 28.553, by a Kent County Circuit
Court jury. She was sentenced to a term of 2 to 15
years and now appeals by right.

At trial, the three arresting officers testified that
they went to defendant's house in response to a
phone call from an individual who stated that a
shooting had taken place there. Arriving at de-
fendant's house, one of the officers, James Kuipers,
went up to the front porch where he saw defend-

ant standing with a rifle in her hand. He asked her if she had called the police. She responded, "Yes. I called the police. I shot him. I meant to shoot him. He is my daughter's boyfriend and he has been bothering her". The defendant then handed Officer Kuipers the rifle, two .22-caliber bullets and one spent cartridge. The officer proceeded to examine the porch for traces of blood or a struggle, but found none. Officer Kuipers then asked the defendant if she thought she had hit the victim. She said, "Yes, I hope so".

Another officer searched the vicinity of the house, and found the victim, John LaGrone, lying dead in the back yard. After the body was discovered, Officer Kuipers informed the defendant that she was under arrest and advised her of her *Miranda*[1] rights. Three or four minutes later, without further advising the defendant of her *Miranda* rights, Officer Horlings took an official statement from the defendant.

The victim, John LaGrone, had fathered an illegitimate child by defendant's daughter, Verna. At trial, several witnesses testified that LaGrone had, prior to his death, beaten Verna on several occasions, some of which occurred during her pregnancy. Because of this and other reasons, defendant had months earlier told the victim that he would not be allowed in defendant's house. It was shown that LaGrone had assaulted defendant's daughter three days before the alleged murder.

Defendant testified that, on the evening of the shooting, she was in the living room when she heard the victim come to the front door and talk to Verna through the screen door. She then went into the kitchen from which she heard her daugh-

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

ter and LaGrone begin to argue. When she heard a "noise at the door like a scuffle" and the door slam, defendant went to get a rifle which she kept in a downstairs bedroom. She took the rifle and three shells and went into the living room. At that point, she saw Verna running away from the door and LaGrone standing at the front door. LaGrone had opened the front door, but the inside screen door was still closed. Defendant was pointing the rifle at the front door, and, when LaGrone began to enter the house, she fired it at him. He fell onto the gun barrel and then ran out of the house.

Robert Long, Jr., the son of the defendant, and Hunter Sykes, a nephew of the defendant, arrived at the defendant's home about the time that La-Grone was shot. Long testified at trial that the screen door was open and that LaGrone was partially inside when he heard the shot. Long further testified that, before he heard the shot fired, he heard the victim and the defendant speaking in low voices. Then he heard the gunshot and saw the defendant with the gun.

At trial, the prosecutor attempted to impeach the testimony of Robert Long, Jr. by means of a prior inconsistent statement. Defense counsel requested that the trial judge give a cautionary instruction to the jury concerning the purpose for which the impeachment could be used. The trial judge gave an instruction concerning the evidentiary value of the prior inconsistent statement. He also gave an additional instruction concerning the evidentiary value of the prior inconsistent statement in his charge to the jury before jury deliberation.

Before trial, a *Walker*[2] hearing was held on a

---

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

defense motion to exclude the statements made by the defendant to Officer Kuipers prior to his advising defendant of her *Miranda* rights. The trial judge heard testimony and denied that motion. At trial, the court granted defendant a directed verdict on the first-degree murder charge.

On appeal, defendant raises four claims of error. First, defendant contends that the trial court's *Walker* hearing decision to admit the statements made by defendant prior to the giving of her *Miranda* rights was erroneous. In reviewing a trial court's *Walker* hearing decision, this Court is required to examine the record and make an independent determination of the voluntariness of the challenged statements, *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709 (1972), *People v Summers,* 15 Mich App 346, 348; 166 NW2d 672 (1968). Having done so, we find that the trial court correctly admitted the challenged statements. An individual must be given the *Miranda* warnings at that point when the police investigation has passed from the investigatory to the accusatory stage. *People v Reed,* 393 Mich 342, 357; 224 NW2d 867 (1975), *People v Wasson,* 31 Mich App 638, 642; 188 NW2d 55 (1971). The crucial factor in determining if the investigation has become accusatory is whether at the time the challenged statements are made, "the investigation has focused on one suspect". *Id.* We find that, at the time defendant made the challenged statements, the police were still investigating to determine if a crime had, indeed, been committed. Defendant's statement that she had shot someone was in response to Officer Kuipers' asking if she had called the police. This was a volunteered statement prior to accusation, not within the *Miranda* rule, *People v Walsh,* 27 Mich App 100, 105; 183 NW2d 360

(1970). When defendant stated that she hoped she had hit the individual, Officer Kuipers was still attempting to determine if such a shooting had occurred. He had not found any blood or signs of a struggle to verify such a crime, and LaGrone's body had not yet been found. The officer's question was prompted by defendant's own volunteered statement and was properly deemed admissible, *People v Leffew,* 58 Mich App 533, 536; 228 NW2d 449 (1975).

Second, defendant contends that the district court judge abused his discretion in binding her over for trial on an open charge of murder. Defendant argues that the district court judge erroneously found that there was probable cause that the murder was premeditated and, thus, that defendant could be charged with murder in the first degree.

A magistrate's determination of probable cause will not be upset on appeal except in a case of a clear abuse of discretion. *People v Paille #2,* 383 Mich 621, 627; 178 NW2d 465 (1970), *People v Stinson,* 58 Mich App 243, 259; 227 NW2d 303 (1975). To constitute murder in the first degree, the killing must have been "deliberate and premeditated", MCLA 750.316; MSA 28.548, that is, characterized by:

" * * * a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look'."

*People v Morrin,* 31 Mich App 301, 329–330; 187 NW2d 434 (1971), *lv den* 385 Mich 775 (1971). See

also *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975).

In making a probable cause showing before the magistrate, proof of the corpus delicti of first-degree murder must be demonstrated *aliunde* a defendant's confession, and the confession is inadmissible until the corpus delicti is shown, *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973), adopting dissent by LEVIN, J. in *People v Allen,* 39 Mich App 483; 197 NW2d 874 (1972). *Cf. People v Sparks,* 53 Mich App 452; 220 NW2d 153 (1974).[3] This rule applies to preliminary examinations. *People v Asta,* 337 Mich 590; 60 NW2d 472 (1953), *People v Randall,* 42 Mich App 187; 201 NW2d 292 (1972). The corpus delicti is established when:

" * * *the people have introduced evidence from which the trier of fact may reasonably find that acts constituting *all the essential elements* of the offense have been committed and that someone's criminality was responsible for the commission of those acts." (Emphasis in original.)

*People v Allen,* 39 Mich App 483, 496; 197 NW2d 874 (1972). *Cf. People v Meyer,* 46 Mich App 357; 208 NW2d 230 (1973).[4] This Court has held that

[3] A panel of this Court in *Sparks* held that the *Allen* corpus delicti rule applies only to felony-murder cases. We disagree. *Allen* dealt with both elements which may distinguish first from second-degree murder: an underlying felony and premeditation. 39 Mich App at 501–502. LEVIN, J., stated in *Allen* at 503:

"Just as the people must establish with evidence the essential element distinguishing second-degree murder from first-degree murder in order to convict an accused person of the aggravated offense, so, too, in order to prove the *corpus delicti,* that distinguishing element must be established by evidence independent of the accused person's confession." (Footnote omitted.)

[4] It would appear that *Meyer* mistakenly cited *People v Allen* for the definition of corpus delicti which *Allen,* in the quoted portion, rejects: "(1) [T]he existence of a dead body and (2) evidence of an unnatural cause of death." 46 Mich App 357, 363. *Allen* requires evidence of each *element* of the crime.

certain types of nonconfession statements, while classified as admissions, may be used to establish the corpus delicti: a statement itself an element of the offense, an excited utterance, a statement made before the crime's commission, a statement made contemporaneously with the crime. *People v Randall,* 42 Mich App 187, 191; 201 NW2d 292 (1972). See also *People v Meyer, supra.*

We find that the record before the magistrate provided probable cause for a binding over on first-degree murder. The malice necessary for common law, second-degree, murder may be presumed from the use of a deadly weapon to perpetrate the killing, *People v Collins,* 166 Mich 4; 131 NW 78 (1911), *People v Wright,* 25 Mich App 499; 181 NW2d 649 (1970), *lv den* 384 Mich 804 (1971). A number of factors exist from which the additional element required for first-degree murder, premeditation, may be inferred. While the use of a lethal weapon may not, by itself, show premeditation, it may support such an inference, *People v Wolf,* 95 Mich 625, 629; 55 NW 357 (1893), *People v Hoffmeister,* 394 Mich 155; 230 NW2d 270 (1975), *People v Sparks,* 53 Mich App 452, 456; 220 NW2d 153 (1974). The fact that defendant and LaGrone had a past history of strife tends to establish a motive, *People v Wolf, supra, People v Morrin, supra,* at 331. The statements made to Officer Kuipers prior to the *Miranda* warnings provide further evidence of intent. When asked if she had shot the victim, defendant replied "I hope so". Because this statement was sufficiently contemporaneous with the shooting and was made before defendant had time to reflect or fabricate, *Rice v Jackson,* 1 Mich App 105, 110–111; 134 NW2d 366 (1965), it was admissible to establish the corpus delicti. *People v Randall, supra.* In addition, the

preliminary examination testimony showed that sufficient time existed for defendant to have formed a deliberate intent to murder LaGrone. About five minutes elapsed from the time the victim came to the front door to the time defendant shot him. During that time, defendant went from the living room to the kitchen and then to a bedroom to get her gun before returning to confront the victim. Defendant's intent could have been formed during this time.

Having found probable cause for binding defendant over on a first-degree murder charge, we similarly must reject defendant's third claim of error, that the trial judge erroneously refused to direct a verdict on the second-degree murder charge. Viewed in the light most favorable to the prosecution, *People v Vail, supra,* the evidence presented at trial would clearly have justified a reasonable man in concluding that all the elements of second-degree murder were established beyond a reasonable doubt, *People v Hood,* 37 Mich App 195, 197; 194 NW2d 472 (1971). There was an unlawful killing. The statements made to Officer Kuipers, combined with the use of a lethal weapon at close range, are probative of the presence of malice aforethought, *People v Hoffmeister, supra,* and of the absence of justification, excuse or recognized mitigation. *People v Ray,* 56 Mich App 610; 224 NW2d 735 (1974).

We find defendant's fourth claim of error, that the trial court gave an erroneous cautionary instruction concerning impeachment testimony to the jury, to be without merit. We find that any conceivable difficulty which may have resulted from this instruction was cured by a later instruction given at the close of trial, before jury deliberation.

Affirmed.