Napier was indicted and convicted of murder in the first degree in the Circuit Court of Mobile County. On appeal, the Court of Criminal Appeals affirmed and we granted certiorari because the case involves a question of first impression. The facts are fully set out in the opinion of the Court of Criminal Appeals. Napier v. State, 357 So.2d 1001 (1977), and do not need to be restated in detail here. Basically, the State charged Napier with first degree murder of David Archie Owings, who died as a result of two self-administered injections of heroin given to him by the petitioner. Napier was convicted under the following provision of Title 14, § 314, Code of Alabama 1940, Recompiled 1958:
 "Degrees of murder. — Every homicide . . . perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life, is murder in the first degree. . . ."
This statutory language, defining the fourth class of murder in the first degree under § 314, is commonly referred to as universal malice, and was defined by this court in Mitchell v.State, 60 Ala. 26, 30 (1877), as follows:
 ". . . By universal malice, we do not mean a malicious purpose to take the life of all persons. It is that depravity of the human heart, which determines to take life upon slight or insufficient provocation, without knowing or caring who may be the victim. The supreme depravity shown in this so-called universal malice, is considered as the equivalent of the strong adjectives, willful, deliberate, malicious, and premeditated, which characterize the first class of murder in the first degree." (Emphasis Supplied)
The State argues that the petitioner's act of giving to the deceased heroin of unknown strength, knowing that it would be injected by the recipient, evinces a degree of depravity of the heart as defined by the court sufficient to equate malice and, therefore, sufficient to support a conviction of murder in the first degree.
Legislatures, prosecutors and courts throughout the nation, justifiably concerned with the rising numbers of deaths resulting from drug abuse, have attempted, in various ways, to define the criminal dimensions of drug abuse resulting in death. We have not been cited to, nor have we found, any case where a first degree murder conviction has been sustained involving giving or selling drugs to a person who dies as a result of injecting or ingesting the drug. As the Court of Criminal Appeals noted, there are only two reported cases in which the prosecution was grounded upon the universal malice concept; and, in each of those cases, the murder was defined by statute as second degree. Commonwealth v. Bowden, 456 Pa. 278,309 A.2d 714 (1973); People v. Johnson, 68 Misc.2d 937,329 N.Y.S.2d 265 (1972). In Johnson, the defendant was indicted for wanton murder under N.Y. Penal Law, § 125 (2) (McKinney 1967), which states:
 ". . . `A person is guilty of murder when: * * * 2. Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.' . . ." (Emphasis Supplied) (329 N.Y. So.2d at 267) *Page 1013 
The defendant sold heroin to a minor child who died soon after the drug was self-administered. The court denied the defendant's motion to dismiss the indictment, holding a fact issue was presented, i.e.:
 ". . . if proven, what were the `natural and probable consequences' of a sale of heroin to a minor 17 years of age? And, if proven, was the conduct so reckless as to create a grave risk of death and cause the death of that person? . ." (329 N.Y.S.2d at 267)
In Bowden, the Supreme Court of Pennsylvania reversed a conviction of second degree murder where the death was caused by an overdose of heroin, and refused to apply the universal malice doctrine because there was no reasonable anticipation of death involved.
There are no reported decisions upholding a murder conviction in any degree where the prosecution was based upon the universal malice concept. There are several California cases affirming murder convictions in drug cases, but those prosecutions were based upon the felony murder doctrine. Peoplev. Taylor, 11 Cal.App.3d 57, 89 Cal.Rptr. 697 (1970); People v.Cline, 270 Cal.App.2d 328, 75 Cal.Rptr. 459 (1969); Ureta v.Superior Court of Monterey County, 199 Cal.App.2d 672,18 Cal.Rptr. 873 (1962).
The rationale of the California cases has been expressly rejected and severely criticized in other jurisdictions as an expropriation of legislative authority. State v. Mauldin,215 Kan. 956, 529 P.2d 124 (1974); State v. Dixon, 109 Ariz. 441,511 P.2d 623 (1973). In New York, drug deaths have been dealt with at length on several occasions, and the courts have affirmed manslaughter convictions. Homicide liability arising from drug law violations has been raised under three different New York statutes: N.Y. Penal Law, § 125.15 (1), (McKinney 1967) (referred to as reckless manslaughter); N.Y. Penal Law, § 125.10, (McKinney 1967) (referred to as negligent homicide); and N.Y. Penal Law, § 125.25 (2), (McKinney 1967) (referred to as wanton murder). In People v. Pinckney, 65 Misc.2d 265,317 N.Y.S.2d 416 (1971), the court rejected the application of any form of statutory homicide. It was held that an injection of heroin into the body does not generally in itself cause death. Under such circumstances, a defendant could not be said to have knowledge that death would result. However, in People v.Cruciani, 44 A.D.2d 684, 353 N.Y.S.2d 811 (1974), it was held that the injection of a dangerous drug by the defendant into another constituted a homicidal act and a conviction for reckless manslaughter was affirmed.
In Cruciani, the defendant administered an injection of heroin to the deceased with the knowledge that she was already under the influence of barbituates. The case was distinguished from Pinckney because the risk of death was substantially increased when the central nervous system was already depressed as the result of the consumption of barbituates. The defendant's knowledge of this fact increased his mental culpability and evidenced a reckless disregard for the risk involved. The decision in Cruciani to affirm a conviction for manslaughter finds support in other jurisdictions where reckless disregard for human life has been statutorily adopted as an element of manslaughter and applied to heroin death cases. People v. Meyer, 46 Mich. App. 357, 208 N.W.2d 230
(1973); State v. Thomas, 118 N.J. Super. 377, 288 A.2d 32
(1972).
In the instant case, however, the jury was charged only on murder in the first degree. It was not charged on lesser included offenses. Therefore, we do not have before us the question of whether a conviction of manslaughter or a lesser degree of murder would be sustained. The only issue before us is whether a first degree murder conviction based upon the universal malice doctrine provided for in Title 14, § 314, Code, can be sustained under the evidence in this case.
As early as 1877, in Mitchell v. State, supra, this court, speaking through Justice Stone, held that there must be a determination on the part of the defendant "to take life" without knowing or caring who the victim may be, to constitute universal malice. As recently as 1977, in Langford v. *Page 1014 State, Ala., 354 So.2d 313 (1977), this court reversed a first degree murder conviction based on universal malice where the defendant, an intoxicated driver, drove an automobile at high speed on a busy highway, resulting in death to another. The court relied on Mitchell, supra, in holding:
 "The word `determines' presupposes that some mental operation has taken place; the reasoning faculty must be called into play. (Citations Omitted)
". . .
 "As Langford has correctly pointed out, in the instant case, the defendant determined only to drive upon the highway after drinking. There is no showing that he determined to have a collision; nor is there any evidence that he realized the likelihood of a collision; and the consequent taking of human life, and proceeded in the face of such probabilities." (At 315)
The textbook examples of universal malice are generally such acts as shooting into an occupied house or driving an automobile into a crowd. State v. Massey, 20 Ala. App. 56,100 So. 625 (1924). In each instance, the defendant's act endangers the lives of many with a high and obvious probability that death or, at least, serious injury would result. In each case, the defendant evinces a culpable mind, determined to act no matter what the consequences to others. He must have determined to follow a course of action which he knows, or should know, will, in all probability, lead to harm to another.
Napier's actions in giving Owings a quantity of heroin of unknown purity, while evincing a high degree of recklessness, does not exhibit the degree of malice necessary to support a conviction for murder in the first degree. The evidence does not show that he intended any injury to Owings, nor does it show that he made any determination to cause what would probably be injury or harm to any other person. Without such evidence, a conviction of murder in the first degree cannot be affirmed.
Trafficking in drugs is reprehensible and persons who deal in illicit drugs deserve the contempt which society holds for them, and should be held criminally liable for deaths resulting from their ignoble trade. The legislature can clearly enact legislation imposing homicide liability for death producing drug law violations and may have done so in the new Criminal Code, not yet effective. Act No. 607, Acts of Alabama 1977. The old statute, however, under which the State indicted and the jury convicted the petitioner, falls short as a vehicle for prosecution and conviction of murder in the first degree.
The decision of the Court of Criminal Appeals is reversed and remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and BLOODWORTH, FAULKNER, JONES, ALMON and EMBRY, JJ., concur.
MADDOX and BEATTY, JJ., concur in result.