PEOPLE v COPPERNOL

1. CRIMINAL LAW—CONSTITUTIONAL LAW—GENERAL QUESTIONING—
   SUSPICIOUS ACTIVITY—ADVISING OF RIGHTS—ACCUSATORY INVES-
   TIGATION.

   General on-the-scene questioning of citizens by officers investigat-
   ing a report of suspicious activity is not custodial interrogation
   requiring that those questioned must be advised of their rights
   to counsel and against self-incrimination, where the investiga-
   tion has not yet reached the accusatory stage and those ques-
   tioned are not in custody.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—VOLUNTEERED STATEMENTS
   —INTERROGATION—ADVISING OF RIGHTS.

   Statements to police which are volunteered by one suspected of a
   crime and which are not made in response to interrogation are
   admissible even though the suspect has not been advised of his
   constitutional rights.

3. CRIMINAL LAW—CONSTITUTIONAL LAW—QUESTIONING SUSPECT—RE-
   QUIRED CONCERN—LEGITIMATE CONCERN—SAFETY.

   Statements made by a suspect in answer to questions asked by an

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 5 Am Jur 2d, Arrest § 69 *et seq.*
  21 Am Jur 2d, Criminal Law §§ 314, 357, 440 *et seq.*
  29 Am Jur 2d, Evidence §§ 555–557.
  Necessity of informing suspect of rights under privilege against self-
    incrimination, prior to police interrogation. 10 ALR3d 1054.
[4] 29 Am Jur 2d, Evidence §§ 582, 583, 585–590.
  Admissibility of pretrial confession in criminal case—Supreme
    Court cases. 1 L Ed 2d 1764, s. 4 L Ed 2d 1833, 12 L Ed 2d 1340.
  Duty of court to institute preliminary examination as to voluntary
    or involuntary character of confession. 102 ALR 605.
[5] 29 Am Jur 2d, Evidence §§ 493, 708, 711, 713.
[6] 29 Am Jur 2d, Evidence §§ 494, 1103.
  Consideration, in determining facts, of inadmissible hearsay evi-
    dence introduced without objection. 79 ALR2d 890.
[7–9] 21 Am Jur 2d, Criminal Law § 251.
  29 Am Jur 2d, Evidence §§ 180, 186.
  41 Am Jur 2d, Indictments and Informations §§ 55, 56, 60.
  58 Am Jur, Witnesses §§ 3, 111.
[9] 17 Am Jur 2d, Continuance §§ 10, 32.

arresting officer which are prompted by the officer's legitimate and required concern for the safety of himself and others are admissible at trial even though no *Miranda* warnings had been given.

4. CRIMINAL LAW—APPEAL AND ERROR—FINDINGS OF FACT—CONFESSIONS—VOLUNTARINESS.

   A trial court's findings of fact at a hearing to determine the voluntariness of a defendant's statement to police where amply supported by a record which does not leave the reviewing court with a definite and firm conviction that a mistake has been made will be upheld.

5. CRIMINAL LAW—EVIDENCE—HEARSAY—RES GESTAE EXCEPTION—SPONTANEOUS UTTERANCES—ACCOMPLICES—CROSS-EXAMINATION.

   Statements made by a suspect at the scene of a crime relating to the presence of an accomplice at the scene fall within the res gestae exception to the hearsay rule where they are made in response to a startling event, made before there has been time to contrive, and there is a relationship between the statements and the preceding events, and they are admissible in evidence, especially where the declarant testifies and can be cross-examined.

6. APPEAL AND ERROR—PRESERVING QUESTION—HEARSAY—PREJUDICE.

   Failure of defense counsel to object to the admission of hearsay testimony which places the defendant at the scene of a crime is a bar to appellate review of such testimony where the likelihood of prejudice was minimal because the credibility of the out-of-court declarant could be tested at trial.

7. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—INDORSEMENT—WITNESS KNOWN TO DEFENDANT.

   Failure of the prosecution to indorse or produce a res gestae witness at trial does not require reversal where the identity of the witness is made known to the defendant before or during trial, and defendant does not move for the indorsement or production of that witness, and where the claim of appeal was filed before an expressly prospective Supreme Court decision which made production of such witnesses mandatory.

8. APPEAL AND ERROR—CRIMINAL LAW—NEW TRIAL—WITNESSES—INDORSEMENT OF WITNESSES—PRODUCTION—TRIAL—DISTRICT AND PROSECUTING ATTORNEYS—HEARING.

   A defendant shall before filing a brief on appeal move the trial

court for a new trial where he claims error because of a failure of the prosecution to produce an unindorsed or indorsed res gestae witness; at the hearing for a new trial the prosecutor shall produce or explain why he cannot produce the witness or why he did not indorse or produce him at trial; if the witness is produced at the hearing, he shall be examined regarding his knowledge of the crime, and, if a new trial be denied, the judge shall state his reasons.

9. CONTINUANCE—CRIMINAL LAW—COURTS—MOTIONS—DENIAL OF MOTION—WITNESSES—OBTAINING WITNESSES—FAILURE TO CALL WITNESS.

A motion for a continuance to allow defense counsel to obtain five additional witnesses was properly denied by the trial court where the defendants did nothing to obtain their presence in the time that they had to do so, two of the witnesses requested were in the courtroom at trial and were not called by the defense, two others were known to defendant well in advance of the trial and would have testified to issues which were extant from the beginning of the case, and the testimony of the fifth could have been substituted by another witness in the courtroom who was not called.

Appeal from Chippewa, William F. Hood, J. Submitted Division 3 February 5, 1975, at Grand Rapids. (Docket Nos. 18874, 19533.) Decided March 24, 1975.

Terry J. Coppernol and Randy L. Coppernol were convicted of breaking and entering with intent to commit larceny. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Farrell E. Elliott,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, by *Aloysius J. Lynch),* for the people.

*Daniel J. Wright,* Assistant State Appellate Defender, for defendant.

Before: Bronson, P. J., and M. F. Cavanagh and D. F. Walsh, JJ.

Walsh, J. The defendants were convicted of breaking and entering with intent to commit larceny, contrary to MCLA 750.110; MSA 28.305, at a bench trial which concluded on September 11, 1973. Each was sentenced to serve from six to ten years in prison and both defendants appeal their convictions as of right.

At around midnight on July 23, 1973, two men were observed walking up the stairs of a building adjacent to the Woolworth store in Sault Sainte Marie. Mrs. Christie, a tenant in the adjoining building, testified that she could not see the faces of the two men but did notice that one of them was carrying what appeared to be a drill. She called her neighbor, Edna Miller, and together they watched one man descend the staircase. Mrs. Christie was unable to identify this individual, and Edna Miller was never called to testify.

The police were notified and after three officers had convened at the scene, they approached an automobile which was parked in a lot behind Woolworth's. One of the officers had previously seen Terry Coppernol descend the stairs and enter the vehicle.

Officer Harris testified that Terry Coppernol was seated in the vehicle along with two young girls. He approached the passenger side, while the other two officers went to the other side and asked Terry for identification. His testimony continues:

"I asked him for identification and he produced a Michigan driver's license. I then asked him if he was the subject that was on the roof of Woolworth's and he said yes, he was. I said, 'Where is your friend? Is he still up there?', and he said, 'Yes'."

Terry was left in the custody of Officer Albert Jaros while the other two officers climbed to the roof of Woolworth's to look for the other subject. Firearms and boxes of ammunition bearing Woolworth sales tags were seen on the roof as well as a broken chain securing a door leading down into the store. Officer Albert Jaros was immediately advised of these circumstances and at that time placed the defendant Terry Coppernol under arrest. No Miranda warnings had as yet been given the defendant. Terry was placed in the back seat of one of the patrol vehicles and was told that the officers were entering the building to see if there were any other people there. Officer Jaros testified:

> "At this time the defendant, Terry Coppernol, stated to me that his brother was still inside the building, and I asked him if he was armed and he said he believed that he was but not sure. He then asked me if it would be permissible for him to attempt to shout into the building and ask his brother to come out peaceably, in order that he would not be injured or harmed, and I agreed to this."

The defendant was then transported to the police station and a formal written statement was given to the police after *Miranda, infra,* warnings had been given. A *Walker*[1] hearing was conducted to determine the admissibility of the above three statements. The issues were resolved against the defendant. We are obliged to examine the entire record and make an independent determination of the ultimate issue of voluntariness. *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709 (1972), *People v Douglas,* 50 Mich App 372, 376; 213 NW2d 291 (1973). This we have done and perceive no error.

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

The first statements elicited from defendant Terry Coppernol acknowledging that he had been on the roof and that his "friend" was still up there were given in response to Officer Harris' initial questioning when he approached the vehicle.

At this point it was not apparent that any crime at all had been committed. The officers were investigating a report of suspicious activity. Their investigation had not reached the accusatory stage. Although there were three officers at the car when the initial questions were asked, the defendant was not "in custody" as he contends. General on-the-scene questioning of citizens in the fact-finding process under circumstances such as these is not custodial interrogation of the type requiring forewarning as to constitutional rights. *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), *People v Jeffries,* 39 Mich App 506; 197 NW2d 903 (1972), *People v Hutton,* 50 Mich App 351; 213 NW2d 320 (1973).

The second statement, made by the defendant Terry Coppernol after he was placed under arrest, to the effect that his brother was still inside the building was a volunteered remark not made in response to interrogation. As such, the admissibility is not affected by the *Miranda* decision. *People v Moore,* 51 Mich App 48; 214 NW2d 548 (1974), *People v Griner,* 30 Mich App 612; 186 NW2d 800 (1971). The officer's question as to whether or not his brother was armed was not aimed at building a case against the defendant but was rather a proper inquiry necessary under the circumstances for the protection of the defendant Randy Coppernol and the officers themselves. Similar questions prompted by an arresting officer's legitimate and required concern for the safety of himself and others were affirmed in *People v Toler,* 45 Mich

App 156; 206 NW2d 253 (1973), and *United States v Castellana,* 500 F2d 325 (CA 5 1974).

Finally the defendant contends that the written statement furnished to the police officers was given in exchange for a promise of leniency and therefore rendered inadmissible. *People v Pallister,* 14 Mich App 139; 165 NW2d 319 (1968). The trial judge resolved a direct conflict in the testimony against the defendant and our review of the *Walker* hearing does not lead us to a different conclusion. See *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972), and *People v Scott,* 44 Mich App 462; 205 NW2d 291 (1973).

We find no error in the admission of the statements made by Terry Coppernol.

Defendant Randy Coppernol asserts that the officer's testimony as to his brother's statements relating to his (Randy's) presence in the building was hearsay and inadmissible as to him. We disagree. These statements fall within the res gestae exception to the hearsay rule. The rule governing admissibility of hearsay evidence under this exception has been well defined in previous opinions of this court. The statements must be made in response to a startling event; the statements must be made before there has been time to contrive; and there must be a relationship between the statements and the preceding events. *Rice v Jackson,* 1 Mich App 105; 134 NW2d 366 (1965), *People v Ivory Thomas,* 14 Mich App 642; 165 NW2d 879 (1968), *People v Kelley,* 32 Mich App 126; 188 NW2d 654 (1971), *People v Meyer,* 46 Mich App 357; 208 NW2d 230 (1973).

In this case Terry Coppernol was suddenly informed, while the crime was presumably still in progress, that the police were going into the building. There is evidence that he thought his brother

was still inside (although he later denied this) and he was very concerned for his brother's safety. He responded immediately. There was no time to fabricate a story or misrepresent facts. The relationship between the statements and the preceding events is obvious.

Furthermore, the real evil in hearsay testimony is that the hearsay declarant is neither sworn nor available for cross-examination. Such was not the case here. Terry Coppernol testified and could have been exhaustively cross-examined as to the statements in question. There was no prejudice. The testimony was properly admitted.

There was certain other hearsay testimony which placed Randy Coppernol at the scene of the crime. Neither defendant raised an objection to the admission of this testimony. Consequently, any issues relating to the propriety of its admission were not preserved for review. *People v Flood,* 25 Mich App 518; 181 NW2d 608 (1970), *lv den,* 385 Mich 788 (1971); *Cf. People v Robert Hall,* 56 Mich App 10, 18–19; 223 NW2d 340 (1974). Moreover, all parties to the unobjected-to hearsay remarks were present at the trial and available for cross-examination. Since the credibility of the out-of-court declarant could be tested at trial, the likelihood of prejudice was minimal. *People v Solomon,* 47 Mich App 208, 212–214; 209 NW2d 257 (1973), *rev'd on other grounds,* 391 Mich 767; 214 NW2d 60 (1974), McCormick, Law of Evidence, (2d ed), § 246, p 548.

Defendants next argue that the prosecution's failure to indorse one Edna Miller on the information constitutes reversible error. The controlling statute is MCLA 767.40; MSA 28.980:

"All informations shall be filed in the court having jurisdiction of the offense specified therein, after the proper return is filed by the examining magistrate, by

the prosecuting attorney of the county as informant; he shall indorse thereon the names of the witnesses known to him at the time of filing the same. The information shall be subscribed by the prosecuting attorney or in his name by an assistant prosecuting attorney. Names of additional witnesses may be indorsed before or during the trial by leave of the court and upon such conditions as the court shall determine."

There is no doubt that Edna Miller (Mrs. Christie's neighbor) was a *res gestae* witness since she was at the scene of the crime in time to see Terry Coppernol descend the stairway. See *People v Harrison,* 44 Mich App 578, 591; 205 NW2d 900 (1973). She was not indorsed on the information, and although both defendants knew of her presence at the scene neither moved for her endorsement or production at trial.

Prior to *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), it was well settled law that "when the identity of the res gestae witness is made known to the defendant during trial, or even before, and defendant does not move for the indorsement or production of the witness", the failure of the prosecution to indorse or produce is not grounds for reversal. *People v Bennett,* 46 Mich App 598, 619–620; 208 NW2d 624, 636 (1973), *lv granted,* 390 Mich 772 (1973), citing eight previous Court of Appeals decisions to the same effect.

In *Robinson, supra,* the Supreme Court did not specifically overrule this line of precedent. Instead, in order to prevent what might have been a "useless new trial" and also to avoid a "possible miscarriage of justice", it retained jurisdiction and remanded to the trial court for an evidentiary hearing. In addition it provided:

"In appeals filed after this opinion is published [Janu-

ary 28, 1974] a defendant desiring reversal or a new trial because of a failure to produce an unindorsed or an indorsed witness shall, before filing his brief on appeal, move the trial court for a new trial. The prosecutor shall produce or explain why he cannot produce the witness or, as the case may be, why he did not indorse and produce him at the trial. If the witness is produced at the hearing, he shall be examined regarding his knowledge of the crime. If a new trial be denied, the judge shall state his reasons."

Randy Coppernol's claim of appeal was filed before January 28, 1974. In view of its expressly prospective language *Robinson* is not applicable to Randy Coppernol's appeal. *People v Robert Hall,* 56 Mich App 10; 223 NW2d 340 (1974).

Terry Coppernol's claim of appeal was filed after January 28, 1974. He failed to move for a new trial as required by *Robinson,* and besides we perceive no "possible miscarriage of justice" in this case. Edna Miller could only have testified as to whether or not she saw Terry Coppernol at the scene of the crime. In his own testimony, however, Terry Coppernol expressly admitted that he met both women while descending the staircase. Nonproduction of this witness does not require reversal or remand as to either defendant.

Defendants' final contention is that the trial court erred in denying his motion for a continuance so as to allow more time to locate witnesses. This claim is based on the fact that Ruth Bourne and Dorothy Hamlin, the two girls who were present in the car with Terry Coppernol at the scene of the crime, were granted immunity from prosecution on the first day of trial. Defendants asserted that this prompted the need for more time to locate five additional witnesses. However this motion was not made until the second day of trial following the close of the people's case.

Without going into unnecessary detail, we find it sufficient to note that two of the requested witnesses were present in the courtroom and were not called by the defense. Two others were known to the defendants well in advance of the trial and would have testified to issues which were extant from the very beginning of the case and not affected by the grant of immunity.

The testimony of the fifth witness, an unnamed psychiatrist, would have borne on the credibility of one of the girls, and the granting of immunity did affect the need for his testimony. But the defendants did nothing to obtain his presence in the more than one day that they had to do so, nor did they call a Mr. Benson who was present in the courtroom and who could have testified on the same subject. We conclude that the trial court did not abuse its discretion in denying the motion. See *People v Carter,* 54 Mich App 69, 73; 220 NW2d 330 (1974), *People v Riley,* 33 Mich App 721, 728; 190 NW2d 569 (1971), *lv den* 386 Mich 753 (1971).

Affirmed.