PEOPLE v MARTIN

PEOPLE v BARIS PERRY

1. Homicide—Premeditated Murder—Felony Murder—Statutes.

Premeditated murder and felony murder are separate crimes within the same statute; premeditated murder requires that the murder be wilful, deliberate and premeditated while felony murder requires that the wrongful murder be committed during the course of one of the enumerated felonies (MCLA 750.316; MSA 28.548).

2. Homicide—Premeditated Murder—Felony Murder—Second-Degree Murder—Statutes.

All murder, other than premeditated or felony murder, is murder in the second degree (MCLA 750.317; MSA 28.549).

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 6] 40 Am Jur 2d, Homicide § 72.
[2] 40 Am Jur 2d, Homicide § 53.
[3] 40 Am Jur 2d, Homicide §§ 45–52.
[4] 40 Am Jur 2d, Homicide §§ 50, 51.
[5] 40 Am Jur 2d, Homicide §§ 468, 472.
[6] 40 Am Jur 2d, Homicide § 454.
[7] 81 Am Jur 2d, Witnesses § 509.
[8] 81 Am Jur 2d, Witnesses § 520.
[9] 81 Am Jur 2d, Witnesses § 600.
[10, 11] 29 Am Jur 2d, Evidence § 494.
  30 Am Jur 2d, Evidence § 1103.
[11] 29 Am Jur 2d, Evidence §§ 493, 496.
[12] 75 Am Jur 2d, Trial § 682.
[13] 5 Am Jur 2d, Appeal and Error § 717.
  29 Am Jur 2d, Evidence §§ 250, 269.
[14] 75 Am Jur 2d, Trial §§ 876, 878, 879, 881.
[15] 75 Am Jur 2d, Trial §§ 906, 907.
[16] 67 Am Jur 2d, Robbery §§ 68, 69, 73.
[17] 67 Am Jur 2d, Robbery §§ 10, 15–19.
[18] 75 Am Jur 2d, Trial §§ 628, 920.
[19] 67 Am Jur 2d, Robbery §§ 68–73.
[20] 40 Am Jur 2d, Homicide § 45.
[21] 40 Am Jur 2d, Homicide § 499.

3. HOMICIDE—PREMEDITATED MURDER—FELONY MURDER—FIRST-DE-
GREE MURDER—CRIMINAL RESPONSIBILITY—REASONABLE DOUBT.

Premeditation and deliberation elevate murder to a crime of first
degree while in felony murder it is the act of committing the
murder during perpetration of a felony that aggravates the
nature of the offense; both share the requirement of malice
aforethought, the common base of criminal responsibility which
must be shown beyond a reasonable doubt.

4. HOMICIDE—FIRST-DEGREE MURDER—MALICE—DEFINITION.

Murder is where a person of sound memory and discretion
unlawfully kills any reasonable creature in being, in the peace
of the state, with malice prepense or aforethought.

5. HOMICIDE—FIRST-DEGREE MURDER—MALICE—INFERRED MALICE—
UNDERLYING FELONY—JURY QUESTION—REASONABLE DOUBT.

A first-degree felony murder conviction requires the prosecution
to prove either an intent to kill or a wanton act and that death
resulted from the commission of one of the enumerated felo-
nies; malice may be inferred from the nature of the underlying
felony and the circumstances surrounding its commission and
the presence or absence of malice is a question for a jury which
must find its existence beyond a reasonable doubt.

6. HOMICIDE—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—
FELONY MURDER—CULPABILITY—BURDEN OF PROOF—CONSTITU-
TIONAL LAW.

The legislative plan for convictions for felony murder is constitu-
tional; there has been no reduction in the prosecution's burden
of proof nor an impermissible shift of this burden to a defend-
ant, all that has occurred is that different elements must be
shown in order to elevate second-degree murder to first-degree
murder.

7. CRIMINAL LAW—POVERTY—UNEMPLOYMENT—GUILT—CROSS-EXAM-
INATION—FAILURE TO OBJECT—MANIFEST INJUSTICE.

Cross-examination of a defendant regarding his poverty and
unemployment, where the crucial fact was whether or not the
defendant committed a robbery, the enumerated felony neces-
sary for a first-degree felony-murder conviction, was relevant
and there was no reversible error, especially in the absence of
objection or manifest injustice.

8. WITNESSES—CROSS-EXAMINATION—IMPEACHMENT—EXTRINSIC EVI-
DENCE—PROOF OF STATEMENT.

A proper foundation for impeaching a witness by extrinsic evi-
dence consists of calling the attention of that witness, at the

time of cross-examination, to what was said, to whom, when, where, the language and if he used it; this gives the witness a chance to straighten things out, but if he denies or does not recall the statement then proof of the statement may be made.

9. Witnesses—Impeachment—Written Statement—Evidence—Sua Sponte Instruction.

Impeachment by a statement previously written requires that the witness must be shown the document before being questioned about it, and where the statement was not introduced into evidence, a trial court has no duty to instruct *sua sponte* on the limited use of the statement signed by the witness.

10. Appeal and Error—Evidence—Hearsay—Objections.

The issue of the admission into evidence of hearsay testimony is not preserved for appellate review where no objection was made at the trial.

11. Evidence—Hearsay—Declarations—Credibility—Cross-Examination—Prejudice—Objections.

The evil in hearsay testimony is that the hearsay declarant is neither sworn nor available for cross-examination, but where the credibility of out-of-court declarants can be tested by their presence, testimony and availability for cross-examination, the likelihood of prejudice is minimal and where there is no objection to the admission of hearsay testimony, there is no error.

12. Criminal Law—Instructions to Jury—Criminal Record—Direct Examination—Appeal and Error.

Failure to give a cautionary instruction on the use of a defendant's criminal record does not constitute error where defendant's record was introduced by his counsel on direct examination during his case in chief, there was no request for timely instruction regarding the use of this testimony and the prosecution did not emphasize this testimony during closing argument.

13. Appeal and Error—Criminal Law—Trial—Evidence—Rebuttal Testimony—Admissibility.

Appellate review of the admission of rebuttal testimony, where there was no objection, is limited where it is doubtful that the witness was res gestae, the testimony seemed to be in the nature of rebuttal, it did not belong in the prosecution's case in chief and did not establish any necessary element of an alleged offense.

14. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER OFFENSES—RE-
    QUEST FOR INSTRUCTION—SUA SPONTE INSTRUCTION—APPEAL
    AND ERROR.

    Failure to instruct *sua sponte* on lesser included offenses is not
    reversible error where there was no request for the instruction
    and the case was tried before January 1, 1976.

15. CRIMINAL LAW—INSTRUCTIONS TO JURY—FAILURE TO OBJECT—
    FAILURE TO SUGGEST INSTRUCTION—APPEAL AND ERROR.

    Instructions which do not mislead a jury nor exclude justifiable
    and excusable homicide from the jury's consideration in a trial
    for murder will not provide grounds for reversible error be-
    cause of an allegation that the court failed to advise the jury
    that they must find beyond a reasonable doubt that the killing
    was without justification, excuse or mitigation where there was
    no objection or request for a fuller instruction at trial.

16. ROBBERY—CRIMINAL INTENT—INSTRUCTIONS TO JURY—FAILURE TO
    OBJECT—FAILURE TO REQUEST INSTRUCTION—APPEAL AND ER-
    ROR.

    Robbery is a specific intent crime and erroneous jury instructions
    regarding intent in robbery cases, even though there was no
    request for and no objection to the instructions given, requires
    reversal of a conviction.

17. ROBBERY—ELEMENTS OF CRIME—CRIMINAL INTENT—CLAIM OF
    OWNERSHIP.

    Robbery is larceny committed by assault or putting in fear and it,
    like larceny, is a specific intent crime; the necessary intent in
    each is the same, although a good faith claim of ownership may
    negate the requisite intent.

18. JURY—INSTRUCTIONS TO JURY—CORRECT INSTRUCTIONS—CONFLICT-
    ING INSTRUCTIONS—PRESUMPTIONS.

    It cannot be presumed that a jury followed the correct instruction
    where there are two conflicting instructions.

19. ROBBERY—INSTRUCTIONS TO JURY—DEFENSES—INADEQUATE IN-
    STRUCTIONS—APPEAL AND ERROR.

    An instruction which does not clearly focus the jury's attention
    on the defense of a claim of right to money taken in a robbery
    is inadequate, and a criminal conviction must be reversed
    where this instruction fails to sufficiently apprise the jury of
    what they were to find in order to convict.

20. Homicide—First-Degree Murder—Lesser Included Offenses.

A jury which returns a verdict of guilty of murder in the first degree necessarily finds that the lesser included offense of second-degree murder was committed.

21. Homicide—First-Degree Murder—Instructions to Jury—Second-Degree Murder—Sentence—Justice—Remand.

Failure to properly instruct a jury on an element of robbery in a first-degree felony murder trial wherein robbery was the underlying felony, requires a reversal, a remand for conviction of second-degree murder, and a resentencing, unless the prosecution is persuaded that the ends of justice would be better served by a new trial, in which case the trial court should vacate the judgment of conviction and grant a new trial.

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted March 3, 1977, at Detroit. (Docket Nos. 24749, 24572.) Decided April 18, 1977. Leave to appeal applied for.

Myron J. Martin and Baris D. Perry were convicted of first-degree murder. Defendants appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Research, Training & Appeals, and *Ronald P. Weitzman,* Assistant Prosecuting Attorney, for the people.

*David W. Sinclair,* for defendant Martin on appeal.

*Alvin C. Sallen,* for defendant Perry on appeal.

Before: D. E. Holbrook, P. J., and Bashara and W. F. Hood,* JJ.

D. E. Holbrook, P. J. Once again we are faced

---

* Circuit judge, sitting on the Court of Appeals by assignment.

with a case involving numerous issues relating to a first-degree felony murder, MCLA 750.316; MSA 28.548. Defendants herein were charged with and convicted of that offense after an incident which occurred in the City of Detroit at an apartment in the late evening hours on December 11, 1974. As a result of this incident one of the occupants of the apartment was fatally wounded. The other occupants maintain that in addition approximately $50 was taken, a fact which defendants dispute. The prosecution's theory was that defendants went to the apartment with the intent to rob the occupants. Defendants admitted their presence on the scene, but denied the robbery. Apparently once again heroin was involved in a homicide. Defendants appealed their convictions as of right.

Defendant Martin argues that Michigan's felony-murder statute is in violation of due process because it permits conviction of first-degree murder without proof of wilfulness, deliberation and premeditation. Defendant's arguments are based on recent Supreme Court cases which hold that the due process clause protects an accused against conviction except upon proof beyond a reasonable doubt of every element necessary to constitute the crime with which he is charged. *In re Winship,* 397 US 358, 375; 90 S Ct 1068, 1078; 25 L Ed 2d 368, 381–382 (1970), *Mullaney v Wilbur,* 421 US 684; 95 S Ct 1881; 44 L Ed 2d 508 (1975). Defendant's fundamental mistake is the failure to recognize that he was convicted upon proof beyond a reasonable doubt of every element necessary to constitute first-degree murder. The Michigan Supreme Court recently rejected the view that premeditation is conclusively presumed by proof of perpetration or attempt to perpetrate a specific felony under the felony-murder rule. *People v*

*Carter,* 395 Mich 434; 236 NW2d 500 (1975). See also, *People v Fountain,* 71 Mich App 491; 248 NW2d 589 (1976). Premeditated murder requires that the murder be wilful, deliberate and premeditated. Felony murder requires that the wrongful *murder* be committed during the course of one of the enumerated felonies. *People v Fountain, supra.* Premeditated murder and felony murder are separate crimes within the same statute.

All murder, other than premeditated or felony murder, is murder in the second degree. MCLA 750.317; MSA 28.549. The Legislature has determined that a murder committed in the course of perpetrating one of the enumerated felonies is deserving of a higher degree of culpability. In premeditated murder it is the act of premeditation and deliberation that elevates the crime to first degree, while in felony murder it is the act of committing the murder during perpetration of a felony that aggravates the nature of the offense. All murder shares this common base of criminal responsibility which must be shown beyond a reasonable doubt. This element is malice aforethought, that is, " '[m]urder is where a person of sound memory and discretion unlawfully kills any reasonable creature in being, in the peace of the state, with malice prepense or aforethought' ". *People v Fountain, supra,* at 499, quoting *People v Potter,* 5 Mich 1, 5 (1858). Therefore, conviction of first-degree felony murder, a separate offense from first-degree premeditated murder, requires that the prosecution must prove either an intent to kill or a wanton act and that the death resulted from the commission of one of the enumerated felonies. Malice must still be found in a felony-murder prosecution, however, it may be inferred from the nature of the underlying felony and the circum-

stances surrounding its commission. However, the presence or absence of malice in each case remains a question for the jury which must find its existence beyond a reasonable doubt. *Fountain, supra.* There is no constitutional infirmity in this legislative plan. Contrary to defendant's claim, there has been no reduction in the prosecution's burden of proof nor has the burden of proof been shifted impermissibly to the defendant. All that has occurred is that different elements must be shown in order to elevate a second-degree murder to first-degree murder. Compare *Mullaney v Wilbur, supra,* where the burden of proof was impermissibly shifted to defendant. Defendant Martin in his well-written and scholarly brief makes strong arguments against maintaining a higher degree of culpability for felony murder. However, such arguments address the wisdom of such rule and are not properly directed to the courts but should be made to the Legislature.

Defendant Martin also contends that the prosecution's cross-examination of him regarding his poverty and unemployment constituted reversible error. Defendant relies upon *People v Johnson,* 393 Mich 488, 498; 227 NW2d 523 (1975), wherein the Court held: "Whether defendant was rich or poor, employed or unemployed, has nothing to do with guilt in the instant case." However, in the instant case the crucial fact was whether or not defendants committed a robbery, the enumerated felony necessary for a first-degree felony-murder conviction. Defendant was found with over $50 in his possession, approximately the amount alleged to have been stolen. Defendant maintained that it was his own money, while the prosecution challenged that fact by showing defendant had not been employed for some time. In this case the

background of defendant was relevant. Furthermore, defendant did not object to this line of questioning on cross-examination.[1] In the absence of manifest injustice it is beyond appellate review. *People v Kincade,* 61 Mich App 498, 506; 233 NW2d 54 (1975). The prosecution did not mention defendant's unemployment or station in life during closing argument and the brief reference to this fact in this lengthy trial was not prejudicial.

Both defendants argue that the trial court reversibly erred by failing to give *sua sponte* a cautionary instruction on the proper use of an alleged extrajudicial statement made by defendant Martin to several witnesses. On cross-examination of witness Douglas Pace, he was asked whether he remembered defendant Martin mentioning anything about a stickup to him immediately following the alleged robbery and murder. The witness said that Martin did not. The prosecution then asked the witness whether he remembered making a statement to police on December 12, 1974, at the homicide bureau at or about 10 in the evening. The witness denied remembering this occurrence. He was then shown the statement with his signature on it and asked if that was his signature. He

---

[1] Both defendants argue that each of their counsels committed such serious mistakes at trial as to deprive them of their constitutional right to a fair trial. *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969), *People v Lewis,* 64 Mich App 175; 235 NW2d 100 (1975), *lv den,* 395 Mich 810 (1975). Both counsel presented a full, fair and adequate defense. See *People v Penn,* 70 Mich App 638; 247 NW2d 575 (1976). Defendants maintain that failure to object to certain instructions constituted such a serious mistake as to deprive defendants of their right to a fair trial. We are not convinced. A court should not grant a new trial unless it finds that but for counsel's mistake defendant would have had a reasonably likely chance of acquittal. *People v Garcia,* 398 Mich 250, 266; 247 NW2d 547 (1976), *People v Degraffenreid, supra,* at 718. This is not so in the instant case. The record indicates that defendants were properly represented at trial, defendants were not deprived of either a fair trial or effective assistance of counsel. *People v Garcia,* at 266.

recognized his signature, but indicated that he did not remember this statement in which he said defendant Martin mentioned a stickup and a shooting. The matter was then dropped. However, later upon redirect examination of a police officer, the prosecutor asked the officer the contents of the conversation he had with this witness. The officer indicated that this witness told him that defendants had robbed and shot someone. Still later upon redirect examination of another police officer the prosecutor again asked this officer about this conversation. The officer indicated that this witness had told him that defendants admitted committing a holdup and shooting. There were no objections to this questioning by the prosecutor, nor was there a request for a cautionary instruction on the proper use of this evidence.

Defendants contend that the trial court had a duty to *sua sponte* instruct on the limited use of the statement signed by this witness. The statement, however, was never introduced into evidence, the foundation was laid but the prosecution went no further.

Traditionally, proper foundation for impeaching a witness by extrinsic evidence consists of calling the attention of that witness, at the time of cross-examination, to what was said, to whom, when and where. As Justice BLACK noted, concurring in *Henson v Veterans Cab Co of Flint,* 384 Mich 486, 499; 185 NW2d 383 (1971): "The language which it is claimed the witness used must be given, and he asked if he used it", quoting *Rice v Rice,* 104 Mich 371, 378–379; 62 NW 833 (1895). See also, *People v Dozier,* 22 Mich App 528; 177 NW2d 694 (1970). The rationale for this is to give the witness the chance to "straighten things out" on the spot. If the witness denies or does not recall the prior

inconsistent statement, then proof of the prior inconsistent statement may be made. *Dozier, supra,* at 532.

In a minority of states, including Michigan, if impeachment is to be made by a statement previously written by the witness one additional foundational step must be taken. The witness must be shown the document before being questioned about it. See Justice BLACK's concurring opinion in *Henson v Veterans Cab Co of Flint, supra,* at 498, quoting *People v Dellabonda,* 265 Mich 486, 508; 251 NW 594 (1933). See McCormick, Evidence (2d ed), § 28, p 55, criticizing the rule in *Queen Caroline's Case,* followed in Michigan.

In the instant case the foundation was laid. The witness's attention was directed to what was said, to whom, when and where. Pace did not recall the prior inconsistent statement which then allowed proof of this statement. Instead of introducing the statement into evidence, however, the prosecution dropped the matter.

Defendant also objects to the alleged erroneous introduction of double hearsay statements made by the police officers as previously noted. Defendant failed to object at trial to this evidentiary error. No objection was made to the questions nor to the hearsay testimony complained of herein. Since no objection was raised to the admission of the hearsay testimony, this issue was not preserved for review. *People v Hunt,* 68 Mich App 145; 242 NW2d 45 (1976), *People v Coppernol,* 59 Mich App 745; 229 NW2d 913 (1975), *People v Buero,* 59 Mich App 670; 229 NW2d 880 (1975).

In *Coppernol, supra,* at 752, this Court noted that "the real evil in hearsay testimony is that the hearsay declarant is neither sworn nor available for cross-examination". In *Coppernol,* an officer

testified to the contents of a hearsay statement made to him by Terry Coppernol. There was also certain other hearsay testimony which placed Randy Coppernol at the scene of the crime. This Court cited the no-objection no-error rule and further noted that all parties to the unobjected-to hearsay remarks were present at the trial and available for cross-examination. "Since the credibility of the out-of-court declarant could be tested at trial, the likelihood of prejudice was minimal." *People v Coppernol,* at 752, citing *People v Solomon,* 47 Mich App 208, 212–214; 209 NW2d 257 (1973), *rev'd on other grounds,* 391 Mich 767; 214 NW2d 60 (1974), McCormick, Evidence (2d ed), § 246, p 584.

In the instant case, as in *Coppernol,* all parties to the unobjected-to double hearsay were present at the trial and did testify. They were available for cross-examination. The likelihood of prejudice was minimal.

Another alleged error is the trial court's failure to give a cautionary instruction on the use of defendant Martin's two felony convictions. Prior to trial defendant made a motion to suppress his prior convictions, which was denied. At trial defendant's record was introduced by his counsel on direct examination during this case in chief. Defendant Martin did not seek a timely instruction regarding the use of this testimony. Furthermore, the prosecution did not emphasize this testimony during closing argument. Defendant cannot now be heard to complain. *People v Haukom,* 56 Mich App 244, 248; 223 NW2d 648 (1974), *People v Stinson,* 58 Mich App 243, 256; 227 NW2d 303 (1975), *People v Allen,* 59 Mich App 536, 540; 229 NW2d 835 (1975), *remanded for resentencing* 397 Mich 823 (1976).

The next alleged error concerns the admission at trial of rebuttal testimony of an unendorsed police officer. The officer testified that defendant Perry made a statement to him denying that he had been at the scene. It is extremely doubtful that this officer was a res gestae witness. See *People v Hadley,* 67 Mich App 688; 242 NW2d 32 (1976). The criminal transaction had been completed when the defendant made the alleged statement to the police officer. The testimony does seem to be in the nature of rebuttal, as contradictory, repelling, explaining or disproving evidence produced by the defense. *People v Atkins,* 58 Mich App 503; 228 NW2d 435 (1975), *People v DeLano,* 318 Mich 557, 570; 28 NW2d 909 (1947). Defendant Perry testified on direct examination that he was in the apartment at the time of the shooting where the victim was shot. The rebuttal witness testified that Perry had told him that he was not present in that apartment at the time of the incident. This alleged exculpatory statement made by Perry to the police officer did not belong in the prosecution's case in chief, it did not establish any necessary element of the alleged offense. Defendant did not object at trial to this testimony and again our review is limited.[2] *People v Ely,* 35 Mich App 390; 192 NW2d 662 (1971), *lv den,* 386 Mich 759 (1971).

Defendant Perry seeks reversal on the basis that the trial court erred by failing to instruct on lesser included offenses. This case was tried before Janu-

---

[2] In addition, defendants probably waived their right to complain about the prosecution's failure to endorse this witness. The transcript indicates that earlier in the trial one witness testified that this police officer did take a statement from defendant Perry. At that time it was indicated that he was not endorsed as a witness. Defendant at that time could have made a timely motion to endorse and produce a res gestae witness. *See People v Winhoven,* 65 Mich App 522, 528; 237 NW2d 540 (1975). Defendant was neither unfairly surprised nor prejudiced because he knew of the existence of this witness, yet failed to demand endorsement or production.

ary 1, 1976. There was no request for an instruction on lesser included offenses, therefore, failure of the court to instruct *sua sponte* is not reversible error. *People v Jenkins,* 395 Mich 440, 443; 236 NW2d 503 (1975).

Defendants also challenge the propriety of various instructions given by the trial court herein as to the elements of felony murder, intent and aiding and abetting. Neither counsel objected to the instructions given at trial.

Defendants first argue that the instruction on homicide was error because the court failed to advise the jury that they must find beyond a reasonable doubt that the killing was without justification, excuse or mitigation.[3] The trial court gave the following instructions:

"Murder is where a person of sound mind and memory kills any reasonable creature and being. Now, that is quaint language, but reasonable creature only means human,—mankind and of course, womankind, * * * '[K]ills any human being who is alive' and being is alive —'with malice,' which is evil design, 'pretense, or afterethought,' that is before the act, either expressed by the manner in which it is done or implied therefrom, so apparently this offense, murder in the first degree as I have described it, part of it, perhaps, it was not known to the English common law, and we have enacted it in our statutes that if it is done under the following circumstances which I have enumerated it is murder in the first degree.

"Now, robbery which is an element of this offense is defined to be the felonious—that word means unlawful —without any right, that the taking of money, of any value, not of any particular value, but of some value from the person of another or in his presence against his will or by violence or by putting him, the subject in fear.

---

[3] *See* Michigan Criminal Jury Instruction 16:1:15, Felony·Murder.

"Now, in order to establish the charge of robbery it must be proven beyond a reasonable doubt as I will later define that term to you that some money or other property was stolen or attempted to be stolen and that the property or the money was taken with a felonious intent, that is, an unlawful intent, with a design to permanently deprive another of his property, that it was taken from the person of another or in his presence, that it was taken by force and violence and putting the subject in fear, in fear of his life, or great bodily harm."

We can see that the instructions could have been improved. Defendants now maintain that the jury should have been told that the killing had to be without justification, excuse or mitigation. This could easily have been done had the defendants asked for a clearer definition of malice aforethought. See 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1655, pp 1994–1995. Nevertheless, the trial court's instructions did not mislead the jury nor exclude justifiable and excusable homicide from the jury's consideration as in *People v Pepper,* 389 Mich 317; 206 NW2d 439 (1973), and *People v Jackson,* 390 Mich 621; 212 NW2d 918 (1973). Defendants failed to object or suggest a fuller instruction and, therefore, this does not constitute reversible error. *People v Reed,* 393 Mich 342, 349–350; 224 NW2d 867 (1975).

Defendant Martin also contends that the court failed to properly instruct the jury as to the elements necessary to convict him as an aider and abettor. We find that although the trial court could have been more explicit, there was no manifest injustice. *People v Burgess,* 67 Mich App 214; 240 NW2d 485 (1976).

In the instant case it appears that the trial court gave both a correct and an incorrect or at

least an ambiguous instruction on intent. The trial court first instructed the jury that robbery is a taking with a "felonious intent, that is, an unlawful intent, with a design to permanently deprive another of his property". Later the court instructed that the intent "in this case is general and not specific". The court was unclear as to what it was referring to as general intent.

Robbery is a specific intent crime. *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973). Our Supreme Court has reversed on grounds of erroneous jury instructions regarding intent in robbery cases, even though there was no request and no objection to the instructions as given. *People v Holcomb,* 395 Mich 326, 333; 235 NW2d 343 (1975). The intent necessary is the same intent as in larceny. Robbery is larceny committed by assault or putting in fear and larceny is a specific intent crime. *People v Kelley,* 21 Mich App 612, 619; 176 NW2d 435 (1970). A good faith claim of ownership may negate the requisite intent. *People v Karasek,* 63 Mich App 706; 234 NW2d 761 (1975), *lv den,* 395 Mich 800 (1975). Where there are two conflicting instructions, it cannot be presumed that the jury followed the correct instruction. *People v Burkard,* 374 Mich 430, 438; 132 NW2d 106 (1965).

Moreover, the instruction appears to have excluded from the jury's consideration the defendants' theory or defense of claim of right. The trial court mentioned words in passing that

"[R]obbery which is an element of this offense is defined to be the felonious—that word meaning unlawful—without any right, that the taking of money, of any value, not of any particular value, but of some value from the person of another, or in his presence against his will or by violence or by putting him, the subject in fear".

In *Karasek, supra,* the Court found that the defendants' good faith claim of right or honest appropriation was an absolute defense to the crime of robbery because robbery involves a felonious intent to take properties to which a defendant has no title. The Court held that if the defendant in good faith believed that the money which he demanded was his own or that he was entitled to it he could not be guilty of the crime of robbery. *Karasek,* at 711–712. In the instant case the defendants contended that they in good faith believed the money which they demanded was their own and that they were entitled to its possession. The instruction does not clearly focus the jury's attention to this defense. The jury may have been able to infer that the defendants believed they had a claim of right to the money. Defendants' contention is similar to that made in *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975), where the testimony of one witness was that the defendant aimed the gun while the defendant's testimony indicated that it was discharged when it was accidently bumped against the wall. The Court therein held that the trial court reversibly erred in giving a misleading instruction on common law manslaughter which recognized only the prosecution's theory of the case, and omitted an instruction on involuntary manslaughter based on defendant's theory. We hold that the trial court's instructions on the underlying felony herein, the robbery, were inadequate to sufficiently apprise the jury of what they were to find in order to convict.

As we have already indicated, the distinguishing element between first-degree felony murder and second-degree murder is the jury finding that the homicide was committed during the perpetration of an enumerated felony. That felony herein was

robbery. However, the trial court's instructions on the necessary elements for a finding of robbery were inadequate. The jury did find properly, however, that there was a homicide committed herein by defendants. The jury returned a verdict of guilty in the first degree, and by so doing found that the lesser included offense of second-degree murder was committed. *People v Jenkins,* 395 Mich 440, 443; 236 NW2d 503 (1975).

Due to the failure of the trial court to properly instruct the jury on the element of robbery in this first-degree felony murder prosecution, we reverse the conviction of first-degree murder and remand for entry of judgment of conviction of the lesser included offense of second-degree murder and for resentencing. If, however, the prosecutor is persuaded that the ends of justice would be better served, upon notification to the trial court before resentencing, the trial court shall vacate the judgment of conviction and grant a new trial on the charge that defendants committed the crime of first-degree murder. *People v Jenkins, supra,* at 443.