526 So.2d 297 (1988)
STATE of Louisiana, Plaintiff-Appellee,
v.
Wesley BRIGGS, Defendant-Appellant.
No. CR87-1123.
Court of Appeal of Louisiana, Third Circuit.
May 11, 1988.
*298 Linda Veazey, Public Defender Office, Abbeville, for defendant-appellant.
J. Nathan Stansbury, Dist. Atty., Louis Garrot, Asst. Dist. Atty., Lafayette, for plaintiff-appellee.
Before FORET, STOKER and DOUCET, JJ.
DOUCET, Judge.
Wesley Briggs was indicted by a Vermilion Parish grand jury on October 17, 1985, for aggravated rape, a violation of La.R.S. 14:42. Following jury trial on April 7, 1987, defendant was convicted of forcible rape, a violation of La.R.S. 14:42.1. The State filed a multiple offender bill to which defendant pleaded not guilty. The trial court denied defendant's Motions for Post Verdict Judgment of Acquittal and in the alternative for a new trial.[1] He was sentenced as an habitual offender to sixty years at hard labor of which a minimum of two years is to be served without benefit of parole, probation or suspension of sentence. On appeal defendant cites four assignments of error.

*299 FACTS
On September 19, 1985, the victim in this case, Edna Tennel, was walking home from a motel in Abbeville where she had been playing cards with four women and a man who continued playing after she left. The victim, who had discontinued cohabitation with her paramour one week earlier and later reconciled with him after the rape, left the card game about 1:00 a.m. and noticed a car behind her from which a black male, whom she had not seen before, emerged and began to follow her. She quickened her pace but was grabbed from behind and pushed behind a house. The victim tried to cry out but was held with her arms behind her and a hand over her mouth and ordered to keep silent in a threatening manner. It was at this point that she was stripped of her clothing and forced to submit to sexual intercourse. The victim told her assailant that she had to return home quickly because her children were unattended. The rapist replied that he would escort her home. The victim agreed out of fear of further harm, leaving at the scene of the attack her cigarette purse containing a small pocket knife and a larger knife she had carried in her bra for protection but was unable to use during this attack. Upon arriving home, the victim's daughter opened the door. The defendant asked for a cigarette light which the daughter provided. The victim went to the kitchen to clean up but called police immediately upon defendant's exit from the house. The daughter, Carmen Tennel, recognized defendant from the neighborhood and knew his last name was Briggs. The police arrived shortly and found the victim crying and visibly shaken. The victim's shirt was inside out with dirt on the back and her shorts also soiled. The victim's knees were dirty and her hair was disheveled with dirt and grass in it. The police had seen a subject matching the description given by the victim on their way to the call a few blocks away and arrested him. The items that the victim claimed to have left at the scene of the assault were found by the police at the place the victim described. An examination by the coroner noted soil on the back of the victim's legs and buttocks but no bruises, although the victim claimed her arm was hurt and swollen from being twisted. Also, the coroner noted the distraught behavior of the victim during the preparation of the rape kit. A serologist found a small amount of semen from the coroner's vaginal swab but insufficient cellular material to compare to appellant's blood type. A forensic chemist found foreign hairs in the pubic combings of the victim which, while not capable of being individualized to defendant, were microscopically compatible with a sample of defendant's pubic hair. The victim and her daughter both picked defendant out of separate lineups. The defense evidence consisted of two of defendant's sisters and a friend of defendant's father and her boyfriend, all testifying that they had seen defendant and the victim walking together "huggingly and lovingly" sometime on the night of the rape.

ASSIGNMENT OF ERROR NO. 1:
Defendant asserts that the court clerk, in reading his not guilty plea to the jury, referred to his presence at arraignment with court-appointed counsel. This is urged as an impermissible reference to his indigency which denied him his right to due process of law.
It is to be noted at the outset that a problem exists with La.C.Cr.P. art. 841, concerning a contemporaneous objection being present here to preserve the error on appeal. When the challenged remark was read to the jury, no objection per se appears in the record. The defense counsel asked to approach the bench at which time an off-the-record discussion occurred. Then the proceedings resumed without an objection being noted for the record. Discontent was no doubt expressed to the judge during the off-the-record discussion. Defendant has stated in his brief that the conference at the bench off-the-record contained an objection to the remark and a request for a mistrial. Counsel's declaration in brief, in conjunction with the record's confirmation of the discussion, should suffice although an objection on the *300 record would be the proper method of preserving the error for appellate review.
On the merits, defendant's argument appears to address an allegedly prejudicial remark which has not been previously argued in this state. La.C.Cr.P. art. 770, which sets forth the prejudicial remarks which mandate a mistrial, does not encompass references to indigency. When a remark or comment is made that might create prejudice to the defendant, yet is not within the scope of La.C.Cr.P. art. 770, the trial judge shall admonish the jury to disregard the comment or grant a mistrial if admonishment cannot overcome the damage to a fair trial. La.C.Cr.P. art. 771. Here, defendant states that only a mistrial was requested thereby negating any question as to whether an admonition to the jury should have been made. State v. Baldwin, 388 So.2d 664 (La.1980); State v. Egena, 369 So.2d 1295 (La.1979); State v. Matthews, 354 So.2d 552 (La.1978).
Mistrial is a drastic remedy and, except in instances in which the mistrial is mandatory, is warranted only when a trial error results in substantial prejudice to the defendant depriving him of a reasonable expectation of a fair trial. State v. Goods, 403 So.2d 1205 (La.1981); State v. Heads, 370 So.2d 564 (La.1979); State v. Overton, 337 So.2d 1058 (La.1976). Where the reference to defendant's poverty made in argument by the state in a manner intended to inject class prejudices into the verdict, a much different situation would present itself. However, here the reference is merely incidental in the fulfillment of the requirement to read the defendant's plea on arraignment. La.C.Cr.P. art. 765(3). No references to defendant's indigency were made and the jury was instructed that its verdict should be limited to the evidence and testimony presented during the trial.
In some other jurisdictions, a prosecutor's arguments referring to the defendant's poverty, lack of employment, lack of fixed habitation, and the like have in some instances, been held prejudicial. See generally, Annot. 36 A.L.R.3d 839 § 9 (1971); Annot. 78 ALR 1438 (1932). However, in most cases where error was found harmless in prosecutorial comments on a defendant's impecuniosity, the distinction is between that of a brief reference and an equation of proverty with guilt. See e.g. State v. Copeland, 94 N.J.Super. 196, 227 A.2d 523, 36 A.L.R.3d 830 (1967); People v. Nelson, 86 Mich.App. 651, 273 N.W.2d 512 (1978); People v. Martin, 75 Mich.App. 6, 254 N.W.2d 628 (1977). This is similar to the rule that the wealth of a defendant cannot be argued as indicative of corruption or wrongful gain. United States v. Stahl, 616 F.2d 30 (2d Cir.1980); United States v. Socony-Vacuum Oil Co., reh. den., 310 U.S. 658, 60 S.Ct. 1091, 84 L.Ed. 1421 (1940).
Defendant points to no case where the mere mention by the deputy clerk of a defendant as appearing with court-appointed counsel approaches a prosecutorial attempt to argue guilt from poverty. It is likely that some, if not all, of the jury did not connect the reference to a finding of indigency of defendant, much less become prejudiced against him because of the remark. It has not been shown how defendant was denied the possibility of a fair trial. Therefore, the denial of a mistrial by the trial judge was not erroneous. We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2:
Defendant contends that the trial judge erred in denying appellant's motion for a post verdict judgment of acquittal, or in the alternative, his motion for a new trial. The motion urged an insufficiency of the evidence in its showing that defendant committed the rape, or that any rape occurred.
The standard of appellate review in evaluating the sufficiency of the evidence is whether a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found that the state proved the elements of the crime beyond a reasonable doubt. State v. Camp, 446 So.2d 1207 (La.1984); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Since the evidence is legally sufficient to show the two facts that defendant claims were not proved, the trial *301 judge was not in error when he denied defendant's motion.
Defendant points to inconsistencies in the victim's testimony. Also, evidence that the victim had been drinking, that she had just broken up with her jealous boyfriend, that the victim was armed but not her attacker, and that no bruises or scratches, but only dirt and grass were found on the victim, are cited as showing the implausible nature of the victim's claim.
However, the victim testified that she was grabbed from behind and pushed behind a house. She tried to scream and struggle but was prevented. The attacker forced her to engage in involuntary sexual intercourse and then walked her home. The victim's daughter also saw the attacker when he arrived at the victim's house. The daughter knew the defendant's last name from around the neighborhood. Both the daughter and the victim positively identified the defendant as the man they saw that night. The victim's daughter, police officers, and the coroner found the victim's clothing disheveled and soiled and her skin and hair evidencing contact with the ground. The victim was also visibly distraught. The experts at trial found semen in the victim's body and pubic hairs compatible with defendant's, though neither could be scientifically tested to be definitely that of defendant.
The victim testified positively that a rape occurred and that defendant was the rapist. The credibility to be given witnesses is a matter to be weighed by the trier of fact. State v. White, 508 So.2d 982 (La.App. 3rd Cir.1987); State v. Klar, 400 So.2d 610 (La.1981); State v. Johnson, 315 So.2d 636 (La.1975). A rational trier of fact giving great weight to the victim's testimony could have found beyond a reasonable doubt that the victim here was raped and that defendant was the perpetrator. We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 3:
Defendant claims that the sentencing of appellant as a multiple offender was erroneous since his prior guilty plea to forgery could not have been used to enhance the sentence. He avers that for the prior guilty plea to be admissible to prove multiple offender status under La.R.S. 15:529.1, he must have been informed by the trial judge at the guilty plea that it could be used later in a multiple bill to a subsequent offense. Defendant cites Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), to show that the voluntariness and intelligence of defendant's prior guilty plea was affected by this omission in the colloquy of factors insuring a constitutionally sufficient plea.
This argument has been addressed by Louisiana courts and found to be without merit. State v. Freeman, 503 So.2d 501 (La.App. 4th Cir.1987); State v. Nuccio, 454 So.2d 93 (La.1984); State v. Jackson, 362 So.2d 1082 (La.1978); State v. Hoffman, 345 So.2d 1 (La.1977), reversed on rehearing on other grounds. The Louisiana Supreme Court stated in State v. Nuccio, supra, that:
"Boykin, furthermore, only requires that a defendant be informed of the three rights enumerated above. Its scope has not been expanded to include advising the defendant of any other rights which he may have, nor of the possible consequences of his actions. Our jurisprudence has never required that a defendant be informed that his guilty pleahis convictionmay be used as a basis for the filing of a future multiple offender bill. For the most part, our application of Boykin has been with very few exceptions or expansions. Only in the extraordinary case where a plea bargain is entered, in which the prosecutor specifies a recommended sentence, will the state be barred from using the guilty plea as an enhancement predicate when the bargained plea is the one which constitutes the second offense which the prosecutor seeks to enhance, and the defendant was not informed that the district attorney could or would multiple bill him. See State v. Hayes, 423 So.2d 1111, 1114 (La.1982)."
Appellant received an adequate three right articulation at his guilty plea as required by Boykin, supra, and that conviction *302 is sufficient as the basis of a multiple offender bill. We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 4:
The section of Louisiana's Habitual Offender Law that defendant was sentenced under, La.R.S. 15:529.1(A)(1), is attacked in this assignment of error as unconstitutionally vague and overbroad. The particular section which defendant attacks reads:
"A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction...."
The statute that relator assails, La.R.S. 15:529.1, has been attacked before and upheld on the question of vagueness. State ex rel. Williams v. Henderson, 289 So.2d 74 (La.1974); State v. Washington, 353 So.2d 258 (La.1977); State v. Lee, 364 So.2d 1024 (La.1978); State v. Turner, 365 So.2d 1352 (La.1979). However, the particular section at issue was never specifically examined for vagueness.
Men of common intelligence must not be forced to guess at the meaning and application of a criminal statute and it must be able to operate in a reasonable, fair and uniform manner. State v. Baker, 359 So. 2d 110 (La.1978); State v. LeCompte, 406 So.2d 1300 (La.1981), reversed on rehearing on other grounds. "A criminal enactment must not be so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." State v. Liuzza, 457 So.2d 664, 665 (La.1984), citing Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966). In the criminal context, ambiguity is resolved in favor of lenity. Busic v. United States, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980); Rewis v. United States, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971); Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). In Bell, supra at 83, 84, 75 S.Ct. at 622, the Supreme Court stated in the case of an ambiguous penalty provision under the Mann Act:
"... It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in nowise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on that the present case furnishes."
It is possible that there may be an argument that this is a penalty enhancing statute and not one that directly punishes certain conduct as unlawful which must necessarily be more clear to apprise the public of the actions which forfeit their liberty and property. The Louisiana Supreme Court addressed this distinction in State v. Booth, 347 So.2d 241 (La.1977). The challenge in Booth, supra, was to the penalty provision of La.R.S. 14:95.1. The court quoted the previously noted vagueness standard for criminal statutes and held:
"By its very terms, the void-for-vagueness doctrine focuses upon the certainty of the conduct proscribed, not the penalties *303 for such conduct. As the two alleged ambiguities are in the penalty clause, this constitutional doctrine is inapplicable."
Booth, supra, at 243.
That case involved a direct penalty for conduct and not a statute enhancing the penalty for a crime at the second tier as in this case, but the reasoning seems applicable. However, this determination is unnecessary because the statute survives the vagueness challenge even under the stricter criminal statute notice analysis.
Defendant does not point out in brief any two interpretations of La.R.S. 15:529.1(A)(1) that persons of ordinary intelligence could confuse as proper. He cites the trial judge's initial hesitation as he was reading the statute to show the failure to put the public on notice. At the sentencing hearing defendant seized upon the trial judge's mistaken first reading that the sentencing would be one-third the longest term to twice the longest term prescribed for his first conviction. This is not what the statute says, the statute saying one-third to twice the longest term prescribed for a first conviction.
The trial judge realized the inconsistency of looking to the first conviction for the term to be enhanced and correctly cited the sentencing range under La.R.S. 15:529.1(A)(1) as one-third to twice the maximum penalty for the forcible rape conviction at bar, forty years, for a range of thirteen and one-third years to eighty years, at least two of which must be without benefit of parole, probation or suspension of sentence. There is no other interpretation that a man of ordinary intelligence could make of this statute. The courts have never expressed any hesitation in this interpretation of the implementation of La.R.S. 15:529.1(A)(1). State v. Vessel, 496 So.2d 576 (La.App. 1st Cir.1986), writ denied, 500 So.2d 420 (La.1987); State v. Rious, 490 So.2d 1195 (La.App. 3rd Cir.1986); State v. George, 482 So.2d 927 (La.App. 2nd Cir. 1986); State v. Price, 476 So.2d 989 (La. App. 1st Cir.1985); State v. Jones, 327 So. 2d 417 (La.1976); United States ex rel. Curtis v. Blackburn, 748 F.2d 1047 (5th Cir.1984). We find no merit to this last assignment of error.
For the reasons assigned the conviction and sentence of the defendant are affirmed.
AFFIRMED.
NOTES
[1] As an error patent on the face of the record it is noted that La.C.Cr.P. art. 873 requires a twenty-four delay between denial of a motion for a new trial and sentencing unless waived. However, this minor deviation from the Code of Criminal Procedure is harmless where no objection was made or prejudice urged and where over two months had elapsed between conviction and sentencing. State v. Freeze, 438 So.2d 1340 (La.App. 3rd Cir.1983), writ denied, 466 So.2d 465 (La.1985), reconsideration denied, 467 So.2d 1125 (La.1985); State v. White, 404 So.2d 1202 (La.1981).